Opinion issued August 31, 2018



In The

# Court of Appeals

For The

## First District of Texas

_____

NO. 01-18-00185-CV
NO. 01-18-00186-CV
NO. 01-18-00187-CV
NO. 01-18-00188-CV

_____

IN THE MATTER OF C.R., Appellant

On Appeal from the 313th District Court
Harris County, Texas
Trial Court Case Nos. 2017-01303J,
2017-01304J, 2017-01768J, & 2017-01769J

# O P I N I O N

The juvenile court waived jurisdiction over the appellant, C.R., with respect

to charges of capital murder, aggravated assault, and aggravated robbery. A fourth

charge of evading detention was dismissed in the trial court. Appellant was ordered transferred to the criminal district court for further criminal proceedings.

Appellant challenges the legal and factual sufficiency of the evidence to support the juvenile court's findings of probable cause that he committed the alleged offenses and that the welfare of the community requires criminal proceedings. *See* TEX. FAM. CODE § 54.02(a). We dismiss the appeal taken from the nonsuited charge. With respect to the remaining charges, we conclude that the juvenile court's determinations were supported by legally and factually sufficient evidence, and the court did not abuse its discretion by certifying appellant to stand trial as an adult. Accordingly, we affirm.

## Background

In March 2017, the State filed petitions in Harris County juvenile court alleging that appellant C.R., at age 16, engaged in delinquent conduct by committing aggravated robbery with a deadly weapon,[1] evading detention,[2] capital murder,[3] and aggravated assault with a deadly weapon.[4] Pursuant to section 54.02(a) of the Family Code, the State later petitioned the juvenile court to

---

[1]    Trial court case no. 2017-01303J; appellate case no. 01-18-00185-CV.

[2]    Trial court case no. 2017-01304J; appellate case no. 01-18-00186-CV.

[3]    Trial court case no. 2017-01768J; appellate case no. 01-18-00187-CV.

[4]    Trial court case no. 2017-01769J; appellate case no. 01-18-00188-CV.

2

waive its exclusive original jurisdiction and transfer appellant to the criminal court for further proceedings on each of the charges, excluding evading detention. The juvenile court ordered a certification examination, which was conducted prior to the certification hearing.

At the hearing, the trial judge took judicial notice of the court's file for each of the three cause numbers for which the State sought certification. The State called Harris County Sheriff's Office Detective J. Roberts as a witness. In January 2017, Detective Roberts was notified of a reported shooting in a movie theater parking lot. Two males, Daniel Gerding and C.T., had sustained gunshot wounds. Gerding had been shot twice in the back, and he later died of his injuries. The autopsy report on Gerding's body noted that he had two gunshot wounds to his back, each with an exit wound through the chest. It identified the cause of Gerding's death as gunshot wounds to the chest, and homicide as the manner of death.

C.T. had been shot in the face. Detective Roberts testified that a bullet passed through C.T.'s left jaw socket and exited through his right jaw socket. C.T. survived his injuries. Photographs of his injuries were admitted into evidence.

Detective Roberts did not have an opportunity to speak with Gerding before he passed away. Both Gerding and C.T. were transported to the hospital before Detective Roberts arrived at the movie theater. However, Detective Roberts

3

testified that responding officers informed him that Gerding stated at the scene that he and C.T. were robbed in his car by a Hispanic male and female. The certification evaluation report, which was admitted into evidence, stated that Gerding had further indicated that he was shot during a drug transaction that "went bad."

As part of his investigation, Detective Roberts inspected a car that was parked in the movie theater parking lot. He testified that bags of marijuana were scattered outside of the car, and the way the marijuana was packaged indicated that it may have been intended for sale. He further testified that the "unorganized" placement of the bags suggested that "some type of incident" occurred at the car. Two mobile phones, which were later determined to belong to Gerding and C.T., respectively, were collected from inside and around the car. Roberts determined that the car was registered to Gerding's father.

Once C.T. recovered from his injuries, he gave a statement to Detective Roberts. C.T. stated that on the night of the shooting, Gerding arranged to meet a "Hispanic female" in the movie theater parking lot. C.T. and Gerding were sitting in Gerding's parked car when the female arrived. She was accompanied by a Hispanic male, and they both got into the back seat of Gerding's car. C.T. informed Detective Roberts that there was some conversation between the others in

the car, and Gerding abruptly attempted to exit the car. The male then shot Gerding twice in the back. C.T. turned around, and the male shot him in the face.

Detective Roberts obtained telephone records for the mobile phones that were recovered at the scene of the shooting. The telephone number associated with the last incoming calls to and outgoing calls from Gerding's phone prior to the shooting was registered to the father of a local high school student, F.D. Detective Roberts met with F.D. at her school. She told him that on the night of the shooting, she had met with appellant at a party. He asked her to set up a meeting with a drug dealer so he could rob the person. F.D. sent text messages to several people who she knew sold drugs, including Gerding, who was the first to respond to the text message. F.D. asked him for marijuana, and they agreed to meet at the movie theater.

F.D. told Detective Roberts that appellant drove her to the theater in a white pickup truck. When they arrived, appellant parked on the side of the building. They both got into the back seat of Gerding's car, which already was parked at the theater. F.D. stated that Gerding showed them a gram of marijuana, and appellant grew impatient because it was not the amount they had agreed upon. Appellant then displayed a semi-automatic handgun. Gerding tried to leave the car, and appellant shot him twice. Then appellant shot C.T. in the face.

5

F.D. stated that she and appellant ran back to the truck. Appellant told F.D. that he had dropped the clip from his weapon. He also asked for her mobile phone, which he broke and later threw out of the car. He told her not to tell anyone about what happened. F.D. told Detective Roberts that appellant drove to a gas station and parked at a pump. She explained that appellant got out of the truck and walked toward the store at the gas station. He went back to the truck, and he changed his clothing before walking back toward the store and going inside. They left the gas station and went to a party. Then appellant dropped her off at home.

Based on the name, age, and description provided by F.D., Detective Roberts obtained a photograph of appellant. He showed the picture to F.D., and she confirmed that he was the person who shot Gerding.

Detective Roberts obtained surveillance video footage from the gas station, which he believed corroborated F.D.'s statement. He stated that the video showed a white pickup truck pulling up to the pump. A male got out of the truck, walked toward the store, and then walked back to the truck before entering the store. The summary of the offense included in the certification evaluation report stated that the male entered the store wearing different-colored shoes than when he initially exited the truck. Although he could not positively identify appellant in the video, Detective Roberts stated that the footage of the male entering the store "appears" to fit appellant's description. The video was admitted into evidence.

6

Detective Roberts created a photographic lineup including a picture of appellant, and he showed it to C.T., who had gotten a full view of the shooter's face immediately before he was shot. He was "55 to 60 percent" certain that appellant was the person who shot him.

During Detective Roberts's investigation, appellant was arrested in connection with a carjacking that occurred on March 1, 2017. Based on Detective Roberts's testimony and information contained in the certification-evaluation report, the State presented evidence that the complainant in that case, Rene Venezuela, reported that he left his truck running while he went into his house. As he returned to his truck, he saw a Hispanic male with short hair sitting in the driver's seat. The male was wearing a white shirt, red pants, and a mask. When the Hispanic male saw Venezuela, he pointed a gun at him and told him to "get in the car." Venezuela ran back into his house, and the male drove away in the truck.

Venezuela had left his mobile phone in his truck, and the police located the truck by tracking the phone. Officers attempted to stop the truck, and the driver led them on a high-speed chase for approximately ten minutes. The truck ran over a curb and crashed into a retaining wall. Appellant, who had been driving the truck, then attempted to flee on foot before he was apprehended and arrested.

Police recovered a backpack from the truck. It contained, among other items, clothing matching the description given by Venezuela and pictures of appellant.

7

Venezuela identified the clothing as that which had been worn by the person who stole his truck. Police also recovered a handgun from the truck. Detective Roberts testified that ballistics testing of the gun demonstrated that it was the same gun used in the January shooting of Gerding and C.T.

Appellant was charged with capital murder of Gerding and aggravated assault of C.T. He also was charged with the aggravated robbery of Venezuela. F.D. was 17 at the time of the shooting, and she was charged, as an adult, with capital murder related to Gerding's death.

The State also called C. Williams, an agency representative for the Harris County Juvenile Probation Department. Williams testified about appellant's history with the Juvenile Probation Department. Appellant was first placed on probation in January 2013, and he spent one year in the Harris County Youth Village. In March 2014 he was placed on probation for criminal mischief. In September 2014 he appeared in court on charges of assaulting and harassing a public servant. He was placed in the custody of his mother under the "intensive supervision program." Appellant again appeared in court in January 2015 for burglary of a habitation and violation of probation, and he was placed in the Juvenile Probation Department's custody at the Harris County Leadership Academy. Then, in September 2015, he was charged with violating his probation and burglary of a vehicle. Williams testified that the burglary charge was dismissed, and appellant was committed to

8

the Texas Juvenile Justice Department for the probation violation. Appellant also had been to the Burnett-Bayland Rehabilitation Center. Williams stated that appellant was on parole when he was arrested on the currently pending charges. The certification evaluation showed that appellant had seven prior referrals to the Juvenile Probation Department related to criminal activity.

Williams testified that since being placed in juvenile detention in connection with the charges now pending against him, appellant had 18 disciplinary infractions. In her opinion, the Juvenile Probation Department already had done everything it could using the resources available to it to rehabilitate appellant. She did not believe there was any other placement for appellant within the Juvenile Probation Department.

The certification evaluation report offered into evidence included results of a joint psychological and psychiatric evaluation conducted by Dr. Alexandra Tellez and Dr. Linda Wittig. The evaluation consisted of many tests, including a Risk Sophistication Treatment Inventory (RSTI), which is used to assess juvenile offenders in the areas of risk of dangerousness, sophistication and maturity, and amenability to treatment. C.R.'s RSTI results in the "Planned & Extensive Criminality" category were in the "High" range. Based on the results of the RSTI and cognitive and clinical assessments, Dr. Tellez determined that C.R. exhibited a "high level of criminally based sophistication and dangerousness" compared to

other "delinquent youth" his age and an "average" level of maturity in comparison to other delinquent youth his age. A summary included in the report stated that the test results indicated that C.R. "exhibited more autonomous behavior used to plan crimes and appears to have a more ingrained criminological lifestyle."

In making her assessment, Dr. Tellez noted that although C.R. tested in the high range for "Planned and Extensive Criminality" even when the present offenses were excluded, the allegations relating to the pending charges presented an additional factor of premeditation. His "solo" participation in the aggravated robbery suggested that he took a "leadership role" in committing crimes.

Appellant did not call any witnesses. He argued that the State relied solely on witness testimony in the capital-murder and aggravated-assault cases, and it had merely established "possible" cause, but not probable cause. He noted that the State had a "video, sketchy photo array, 55 to 60 percent positive." He conceded that the State had shown he fled from a motor vehicle.

The juvenile court found that there was probable cause to believe that appellant committed capital murder, aggravated assault, and aggravated robbery, as alleged in the State's petitions. The court additionally found that based on the seriousness of the offenses alleged and appellant's background, the welfare of the community required criminal proceedings. The court certified appellant as an adult, and it granted the State's motion to waive jurisdiction in the capital-murder,

10

aggravated-assault, and aggravated-robbery cases. The evading-detention charge was nonsuited on a motion by the State, and the court ordered that the remaining cases be transferred to criminal district court.

In all four cases, including the evading-detention case that was nonsuited by the State, appellant filed a notice of appeal from the juvenile court's order waiving jurisdiction. *See* TEX. FAM. CODE § 56.01(c)(1)(A). Because there is no appealable order in the dismissed, now-moot evading-detention case, we dismiss appellate case no. 01-18-00186-CV for want of jurisdiction.

## Analysis

In two issues, appellant contends that the juvenile court abused its discretion by waiving jurisdiction because the evidence was legally and factually insufficient to support transferring the cases to a criminal district court. In his first issue, he argues that the evidence was insufficient to support the determination of probable cause that he committed the offenses. *See* TEX. FAM. CODE § 54.02(a)(3). In his second issue, he challenges the sufficiency of the evidence to support the determination that because of the seriousness of the offenses alleged or his background, the welfare of the community required criminal proceedings. *See id.* § 54.02(a)(3), (f).

The juvenile courts have exclusive original jurisdiction over proceedings involving "delinquent conduct" by children between 10 and 17 years old. *Id.*

11

§§ 51.02(2)(A), 51.04(a). When a child engages in "conduct, other than a traffic offense, that violates a penal law of this state or of the United States punishable by imprisonment or by confinement in jail," it is considered "delinquent conduct." *Id.* § 51.03(a)(1). Under circumstances specified by statute, the juvenile court may exercise its discretion to waive its exclusive jurisdiction and transfer a child to the criminal district court for criminal proceedings. *See id.* § 54.02; *Moon v. State*, 451 S.W.3d 28, 38 (Tex. Crim. App. 2014).

One circumstance in which a juvenile court may waive its exclusive jurisdiction is when no adjudication hearing has been conducted concerning a charge that a child committed, at the age of 14 years old or older, an eligible felony offense, including a capital felony. TEX. FAM. CODE § 54.02(a)(2)(A). Before it may properly exercise its discretion to transfer the child for criminal proceedings in a district court, a juvenile court must determine, after a full investigation and a hearing, "that there is probable cause to believe that the child . . . committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings." *Id.* § 54.02(a)(3); *see also Moon*, 451 S.W.3d at 46. The juvenile court must state specifically in the order its reasons for waiver. TEX. FAM. CODE § 54.02(h).

On appeal, we review the legal and factual sufficiency of the evidence to support the juvenile court's specific factual finding. *See Moon*, 451 S.W.3d at 50. Our review is limited to the facts that the juvenile court expressly relied upon in its transfer order. *Id.*

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the findings and disregard contrary evidence unless a reasonable factfinder could not reject it. *In re S.G.R.*, 496 S.W.3d 235, 239 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Moon v. State*, 410 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 451 S.W.3d 28 (Tex. Crim. App. 2014)). If there is more than a scintilla of evidence to support the finding, then the evidence is legally sufficient. *Id.* Under a factual sufficiency review, we consider all of the evidence presented to determine if the juvenile court's finding conflicts with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Id.*

## I. Probable cause that the child committed the offenses alleged

Appellant argues that the evidence is legally and factually insufficient to support the juvenile court's determinations of probable cause to believe that he committed capital murder, aggravated assault, or aggravated robbery. He contends that the State relied on insufficiently corroborated accomplice testimony to establish that he was involved in the robbery and shootings of Gerding and C.T. He

13

additionally asserts that the evidence related to the aggravated robbery of Venezuela established only that he was guilty of unauthorized use of a vehicle.

In evaluating a determination of probable cause, we consider whether there are sufficient facts and circumstances to support a prudent person's belief that the accused child committed the offense. *See, e.g.*, *In re J.G.*, 495 S.W.3d 354, 374 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The probable-cause standard "requires more than mere suspicion but less evidence than needed to support a conviction or support a finding by a preponderance of the evidence." *In re C.M.M.*, 503 S.W.3d 692, 702 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997)). Courts apply a "totality-of-the-circumstances" analysis to determine probable cause. *Manuel v. State*, 481 S.W.3d 278, 283 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

As relevant to this case, a person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX. PENAL CODE §§ 19.02(b)(1), 19.03(a)(2), 29.02; *see Nickerson v. State*, 478 S.W.3d 744, 755–56 (Tex. App.—Houston [1st Dist.] 2015, no pet.). A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE § 22.01(a)(1). Using or displaying a deadly weapon during the commission of an assault elevates the

offense to aggravated assault. *Id.* § 22.02(a)(2). A firearm is a deadly weapon. *See id.* § 1.07(a)(17).

In reaching its probable-cause determination in this case, the juvenile court considered, among other things, the testimony and documentary evidence admitted at the certification hearing and the court's files for each separate cause.

With respect to the capital-murder and aggravated-assault charges, the evidence showed that Gerding and C.T. were shot in a movie theater parking lot in January 2017. Gerding, who later died from his injuries, told responding officers that he and C.T. had been robbed by a Hispanic male and female. Gerding's autopsy report was admitted into evidence. C.T. was shot in the face. He underwent surgery and survived the shooting. Photographs of C.T.'s injuries were admitted into evidence, and Detective Roberts described them. Detective Roberts also testified that mobile phones found at the location of the shooting led them to interview F.D., who reported that appellant asked her to arrange the meeting with Gerding for the purpose of committing a robbery. During the meeting, appellant shot Gerding and C.T. F.D. identified appellant by name and in a photograph, and she provided details about their actions after the shooting. Detective Roberts testified that video surveillance corroborated F.D.'s statements about events following the shooting, and the video was admitted into evidence. C.T. also identified appellant as the shooter from a photographic lineup. Two months after

15

the shooting, appellant was arrested after he fled from a stolen truck, and the firearm used to kill Gerding was found in the truck.

Appellant argues that the evidence of probable cause that he committed capital murder and aggravated assault is insufficient because it relies on information from F.D., an accomplice to those crimes. In support of this argument, appellant relies on article 38.14 of the Code of Criminal Procedure, which provides that a conviction "cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." However, the objective of a certification hearing is not to determine ultimate guilt or innocence, but rather to determine if there is probable cause to believe the child committed the offense alleged. *See* TEX. FAM. CODE § 54.02(a)(3); *see also J.G.*, 495 S.W.3d at 363. Appellant has presented no authority that the juvenile court is prohibited from considering evidence obtained from an accomplice in the context of a transfer decision. *Accord In re J.D.H.*, No. 01-17-00889-CV, 2018 WL 2107244, at *9 (Tex. App.—Houston [1st Dist.] May 8, 2018, no pet.) (mem. op.).

Further, F.D.'s statements were corroborated by other evidence which connected appellant to the crimes. C.T. identified appellant as the shooter with 55 to 60 percent confidence. *See In re C.M.G.*, 905 S.W.2d 56, 58–59 (Tex. App.—Austin 1995, no writ) (police officer's testimony that fleeing suspect "looked like"

16

the juvenile tended to connect him to the offense alleged and was sufficient to corroborate accomplice witness testimony; positive identification was not required for sufficient corroboration). Additionally, two months after the shooting, appellant was found in possession of the murder weapon.

After considering the totality of the circumstances, and viewing the evidence in the light most favorable to the juvenile court's finding, we conclude that there is more than a scintilla of evidence to support the court's implied determination that a prudent person would be justified in believing that appellant committed capital murder and aggravated assault. The evidence is therefore legally sufficient to support the probable-cause determination. The evidence showed that C.T. was only "55-60%" confident in his identification of appellant. Further, Detective Roberts testified that he could not positively identify appellant from the surveillance video. Although a reasonable factfinder could give less weight to that evidence, the court's determination of probable cause did not conflict with the great weight and preponderance of the evidence so as to be clearly wrong and unjust.

Appellant also challenges the juvenile court's finding of probable cause as to the aggravated robbery offense. He contends that the evidence showed only that he was guilty of unauthorized possession of a stolen truck, and it did not establish his identity as the person who robbed the truck's owner, Venezuela.

17

A person commits robbery when, in the course of committing theft, and with intent to obtain or maintain control of the property, he "intentionally or knowingly threatens or places another person in fear of imminent bodily injury or death." TEX. PENAL CODE § 29.02(a)(2). "Theft" is defined as the unlawful appropriation of property with intent to deprive the owner of the property. *Id.* § 31.03(a). The circumstances that elevate robbery to aggravated robbery include using or exhibiting a deadly weapon in the course of committing robbery. *Id.* § 29.03(a)(2).

The evidence showed that Venezuela saw a male wearing a white shirt, red pants, and a mask in his truck. He also reported that the person who stole his truck pointed a gun at him. Police located the truck on the same day as the robbery. Appellant was driving the truck, and when police attempted to stop him, he fled. A gun, photos of appellant, and clothing matching the description given by Venezuela were recovered from the truck.

Appellant contends that because the offender wore a mask, and Venezuela's description was very general, the evidence did not establish that he stole the truck, and the recovery of the stolen truck proves only that he is guilty of unauthorized use of a motor vehicle. Possession of stolen items, without more, is not sufficient to establish guilt in a prosecution of burglary. *See Grant v. State*, 566 S.W.2d 954, 956 (Tex. Crim. App. 1978). But the fact that appellant led the police on a high-speed chase when officers attempted to conduct a traffic stop of the stolen vehicle

18

is additional circumstantial evidence of his guilt. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (a factfinder may draw an inference of guilt from the circumstance of flight); *see also Guillory v. State*, 877 S.W.2d 71, 74 (Tex. App.—Houston [1st Dist.] 1994, writ ref'd) (flight from the scene may be combined with other facts to show that the accused was a party to the offense). No evidence was presented to contradict the State's evidence. Considering all of the evidence, we conclude that the juvenile court's determination did not conflict with the great weight and preponderance of the evidence. The court's determination of probable cause that appellant committed aggravated robbery was supported by legally and factually sufficient evidence.

## II.   Welfare of the community

In evaluating whether the welfare of the community requires criminal rather than juvenile proceedings, the juvenile court considers the following non-exclusive statutory factors:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

TEX. FAM. CODE § 54.02(f). These factors assist the juvenile court in balancing the potential danger that the juvenile poses to the public against his amenability to treatment. *Moon*, 451 S.W.3d at 38. The State bears the burden to prove by a preponderance of the evidence that because of the seriousness of the offense alleged or the background of the child, or both, the welfare of the community requires transfer of jurisdiction for criminal proceedings, and a waiver of the juvenile court's otherwise-exclusive jurisdiction is therefore appropriate. *Id.* at 40–41.

A two-pronged analysis is used to determine if the juvenile court abused its discretion by waiving its jurisdiction and transferring a case to juvenile court. *Id.* at 47. First, we analyze the juvenile court's specific findings of fact, as they relate to the section 54.02(f) factors, under a "traditional sufficiency of the evidence review." *Id.* We then review the juvenile court's ultimate waiver decision for an abuse of discretion. *Id.* We consider whether, in light of our own analysis of the sufficiency of the evidence to support the section 54.02(f) factors and any other relevant evidence, the juvenile court's decision reflects a reasonably principled application of the statutory criteria or was essentially arbitrary and made without reference to guiding rules and principles. *Id.* The juvenile court is not required to find that every section 54.02(f) factor weighs in favor of transfer to justify its decision. *Id.*

## A. Offense against person or property

The juvenile court found that there was probable cause to believe that appellant committed offenses against the person and the property of another, and it found that the offenses committed against a person caused this factor to weigh more heavily in favor of discretionary transfer.

The court also made findings regarding the particular facts of the offenses, and it found specific aspects of the alleged offenses and appellant's alleged participation in them to be "particularly egregious and aggravating." With respect to the capital-murder and aggravated-assault offenses, the court found that: F.D. told officers that appellant asked her to arrange a meeting with Gerding, and appellant shot Gerding and C.T.; Gerding told officers that a Hispanic male "attempted to rob" him and C.T.; Gerding sustained "gunshot wounds to the chest," and he "died because of his injuries"; and C.T. suffered from a "gunshot wound to the face." With respect to the aggravated robbery offense, the juvenile court found that a pistol was used to threaten Venezuela; police located Venezuela's stolen truck and attempted to stop the vehicle; the suspect, later identified as appellant, "fled in the vehicle" and "evaded for approximately 10 minutes" before he ran the truck over a curb and "crashed into the side of a retaining wall"; a gun was found in the truck; and testing revealed that it was the "same gun that fired the bullets" which killed Gerding.

Appellant does not challenge the juvenile court's finding that the crimes were committed against the person and property of another. Instead, he argues that "there was a significant lack of direct reliable proof" of his involvement in any of the three offenses presented to the court. As discussed in our analysis of the juvenile court's probable-cause determination, the record supports the findings that appellant was involved in each of the offenses. We thus conclude that legally and factually sufficient evidence supported the juvenile court's determination that the offenses were committed against a person.

**B. Sophistication and maturity**

After considering the sophistication and maturity of appellant, the juvenile court found that the evidence weighed in support of discretionary transfer. In the transfer order, the court noted that appellant "is currently 17 years of age." It found that each of the three alleged offenses involved "orchestrated attacks on the victims, as well as planning." In support of this finding, the court noted F.D.'s statement that appellant asked her to arrange a meeting with a drug dealer so he could rob someone.

The juvenile court also noted specific information from the certification evaluation report in support of its finding, including that appellant did not exhibit any significant attention or concentration deficits, and his mother stated that he had

always done well in school. The court found that appellant had earned his GED in August 2016.

These findings are supported by the record. The record contained a stipulation of appellant's date of birth, Detective Roberts's testimony about F.D.'s statements to police, and a copy of the certification evaluation report, which also described F.D.'s statements to police about appellant's criminal involvement related to the capital-murder and aggravated-assault charges. The results of appellant's RSTI, also contained in the certification evaluation report, indicated that he tested in the high range for "Planned and Extensive Criminality," and Dr. Tellez determined that the allegations included a premeditation factor.

Appellant challenges certain findings contained in Dr. Tellez's psychological evaluation. Specifically, he asserts that a number of prior offenses relied upon in the evaluation were committed when he was 13 or 14 years old. Additionally, he argues that the record established that Dr. Tellez determined that his sophistication and maturity level was average compared with others his age. Appellant contends that such a finding weighs against certification because the average sophistication and maturity level of a 16 year old is "not high." He also argues that Dr. Tellez's determination that he presented a "moderately high" risk for recidivism was predicated on him not receiving treatment, but he only could receive treatment within the juvenile justice system. Additionally, he asserts that

the determination regarding his risk for recidivism "is nothing more than a mere conclusion."

The juvenile court did not make any specific findings regarding this challenged evidence in its order. Appellant does not challenge the specific findings that do appear in the juvenile court's order, including that he did well in school, received his GED, and his most recent offenses involved orchestrated attacks. Considering all of the evidence presented, we conclude that the juvenile court's finding that appellant exhibited a level of sophistication and maturity that weighed in favor of transfer was supported by more than a scintilla of evidence and did not conflict with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *See S.G.R.*, 496 S.W.3d at 239.

### C. Record and previous history

The juvenile court found that appellant's "record and previous history" weighed in support of discretionary transfer. The court found that appellant had a "lengthy history" of referrals to the Harris County Juvenile Probation Department, which started when he was 12 years old. In support of its findings, the court described the circumstances leading to five prior referrals to the Juvenile Probation Department, including an assault on his mother, criminal mischief, assault and harassment of a public servant, and burglary of a habitation. The order also noted that appellant had been placed in the Harris County Youth Village, the Burnett-

24

Bayland Rehabilitation Center, and the Harris County Leadership Academy. The court found that after the referral for burglary of a habitation, appellant violated his probation, and he was transferred to the Texas Juvenile Justice Department. It noted that appellant was released in November 2016, and he was on parole when he allegedly committed capital murder and aggravated assault.

The juvenile court further found that appellant admitted to using cannabis, "kush," and cocaine. Specifically, appellant had started using cannabis at the age of seven, and he continued using it weekly until his arrest for the offenses in this case. The court also found that appellant had the benefit of attending two substance-abuse treatment programs, first in 2013 at the Harris County Youth Village and again in 2015 while at the Harris County Leadership Academy. These findings are supported by the reports and records admitted into evidence, as well as testimony at the certification hearing.

Appellant does not contend that the court's factual findings about his record and prior history are inaccurate or otherwise unsupported by the record. He argues that because only two of his prior referrals related to violent offenses, the findings contained in the juvenile court's order "are not so serious as to make this the exceptional case where transfer to the criminal court is justified." Section 54.02(f)(3) requires the juvenile court to consider the record and previous history of the child; it does not limit the court's consideration to violent offenses.

25

Appellant's previous record as detailed in the court's order, considered in light of the pending charges, shows an escalation in violent criminal behavior. Accordingly, we conclude that the juvenile court's findings with respect to this factor were supported by legally and factually sufficient evidence.

**D. Adequate protection of the public and likelihood of rehabilitation**

The fourth statutory factor relates to "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." TEX. FAM. CODE § 54.02(f)(4). The juvenile court found that the evidence weighed in support of discretionary transfer under this factor.

In its order, the juvenile court found that while placed in a juvenile detention center, appellant had been involved in 18 disciplinary violations between May 2017 and February 2018, including failing to follow staff instructions and exhibiting behaviors that "pose a threat to the safety and security of the facility." The court found that based on the "egregious and aggravated" nature of the crimes alleged in this case, the reports, and appellant's prior referral history, he would not be amenable to the court's efforts to rehabilitate him. The court found that appellant's criminal acts were "escalating in nature," and it determined that "there is nowhere else in the juvenile system" to send appellant "where he has not already been."

The juvenile court additionally found that that because appellant could be placed on probation only until his eighteenth birthday, there would be insufficient time to use available procedures, services, and facilities for his rehabilitation. And because appellant could be incarcerated only until his nineteenth birthday, the court found there was insufficient time to "provide the services necessary to rehabilitate him in a manner that is adequate to protect the public."

Appellant contends that the State did not present evidence about "what the full range of procedures, services and facilities available to the Court are or why they would be ineffectual" in rehabilitating him. He asserts that he has not received the full rehabilitation that the juvenile system could provide, and he points to the recommendations in the psychological evaluation that he likely would benefit from a structured environment to help him regulate his involvement in negative activities, "regular individual counseling sessions," and "intensive and continued substance-abuse treatment services in a residential setting." Appellant also points to the determination in the psychiatric evaluation that he "may still benefit from another structural treatment program where he can learn to take responsibility for his actions and develop empathy for victims." The psychiatrist recommended continued substance-abuse treatment. Appellant notes that he still has two years to receive treatment within the juvenile system.

However, as noted in the juvenile court's order, over time appellant's criminal behavior continued to escalate despite numerous prior rehabilitative measures. Appellant violated the terms of his probation on at least two separate occasions, and he continued to commit serious crimes. The crimes alleged in this case were committed while appellant was on parole. Further, while in juvenile detention, among other problems appellant exhibited behavior that posed "a threat to the safety and security of the facility."

Given the repeated failures of the prior rehabilitative measures and the increasingly violent nature of appellant's behavior, we conclude that more than a scintilla of evidence supports the juvenile court's determination that this factor weighs in favor of appellant's certification as an adult. Even taking into account the potential rehabilitative measures referenced in the various reports, we cannot say that the juvenile court's determination conflicted with the great weight and preponderance of the evidence, given the failure of previous rehabilitative attempts.

\* \* \*

The juvenile court found that each of the section 54.02(f) factors weighed in favor of discretionary transfer. We have found that the court's factual findings concerning each of the factors were supported by legally and factually sufficient evidence. The juvenile court's order reflects that it considered the evidence in light

of the statutory factors. Because the court's ultimate waiver decision was made with reference to guiding rules and principles, we conclude that it did not abuse its discretion by waiving its jurisdiction.

## Conclusion

We dismiss appellate case no. 01-18-00186-CV for want of jurisdiction.

In appellate case nos. 01-18-00185-CV, 01-18-00187-CV, and 01-18-00188-CV, we affirm the juvenile court's order waiving jurisdiction.


                    Michael Massengale
                    Justice

Panel consists of Justices Keyes, Bland, and Massengale.