**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00162-CV**
_____

**IN THE MATTER OF J.J.B. III.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-13502-J**

**MEMORANDUM OPINION**

In this accelerated appeal, Appellant J.J.B. III, a juvenile, complains the juvenile court erred by waiving jurisdiction and transferring his case to criminal district court when there is no evidence that the Jefferson County Juvenile Probation Department exhausted all means to rehabilitate him. *See* Tex. Fam. Code Ann. §§ 54.02, 56.01(a), (c)(1)(A). For the reasons explained below, we affirm the juvenile court's Waiver of Jurisdiction and Order of Transfer to Criminal Court.

1

## PERTINENT BACKGROUND

J.J.B. III, a sixteen-year-old, was charged with the following felony offenses against persons or property: evading arrest/detention with a motor vehicle, unauthorized use of a motor vehicle, and two counts of theft of a firearm. The State filed a Petition for Discretionary Transfer, requesting that the juvenile court waive jurisdiction and transfer the case to the appropriate criminal district court under section 54.02 of the Texas Family Code because J.J.B. III was sophisticated and mature enough to be treated as an adult. The State alleged that: (1) the prospects of the public's adequate protection and the likelihood of J.J.B. III's reasonable rehabilitation by the use of available procedures, services, and facilities to the juvenile court warrant his treatment as an adult; (2) the record and J.J.B. III's history warrants his treatment as an adult; (3) J.J.B. III is sophisticated and mature enough to be treated as an adult; and (4) the seriousness of the alleged offenses, J.J.B. III's background, and the community's welfare requires criminal proceedings.

The trial court appointed counsel to represent J.J.B. III in the discretionary transfer proceeding. The trial court conducted a hearing on the State's Petition during which it considered witness testimony and the following records in making its decision: Certification Analysis, Dr. Nisha Amin's Psychological Evaluation Report, and Dr. Edward Gripon's Psychiatric Evaluation. Dr. Amin's Psychological Evaluation states that J.J.B. III understood what he was charged with, the nature of

2

the pending proceedings, and that J.J.B. had demonstrates his capacity to assist his counsel. In her report, Dr. Amin concluded that there are "no critical factors that adversely affect" J.J.B. III and that "there is ample clinical evidence" that he is "fit to proceed." Dr. Gripon's Psychiatric Evaluation states he diagnosed J.J.B. III with ADHD by history and that while J.J.B. III had not been treated for that condition, he did not have significant symptoms. Dr. Gripon concluded that J.J.B. III was "not mentally disabled" and during his evaluation appeared to have "no mental health contraindication to certification/discretionary transfer."

Sheronda Lee ("Lee"), a probation officer with the Jefferson County Juvenile Probation Department, testified that she prepared J.J.B. III's Certification Analysis, which includes information from Dr. Amin's psychological report and Dr. Gripon's psychiatric report. Lee explained that, in her opinion, Dr. Amin's and Dr. Gripon's reports raise no concerns about whether J.J.B. should be certified as an adult.

Lee explained that her analysis includes information that she received from the police about the offenses that resulted in J.J.B.'s arrest. As to J.J.B.'s arrest, Lee stated that on January 15, 2023, at about 3:00 a.m., Jefferson County Sheriff Deputies were dispatched after a black male in black clothing wearing a facemask was reported as seen pulling on car door handles on a security camera. When the deputies spotted the black male, he got into a Ford F-150, and he drove off at speeds of more than 100 miles per hour. By Lee's account, when deputies activated their

3

emergency lights on their clearly marked Jefferson County patrol units, the driver took deputies on a short pursuit for several miles and only stopped when the vehicle crashed. Information Lee received from the police investigation indicated that upon removing J.J.B. III, the sole occupant and driver in the Ford F-160, deputies found he had two firearms, a Taurus 9mm and Sig Sauer .22, in his possession. J.C.C., the owner of Ford F-150, advised he did not consent to anyone operating his truck. Lee explained that police determined that D.C. owned the two pistols that were found in J.J.B.'s possession, and that D.C. had reported the pistols as having been stolen when two of his vehicles were burglarized the same night J.J.B. took the Ford F-150. When an officer contacted the owner of the Ford F-150, J.C.C. told police that he no longer feels safe and carries a gun when he goes outside.

Lee testified that J.J.B. III was charged with four state jail felonies, evading detention with a vehicle, unauthorized use of a motor vehicle, and two charges for stolen guns. Lee testified J.J.B. III was from Louisiana, where he violated his probation for an aggravated assault case and was sentenced to Louisiana's version of the Texas Juvenile Justice Department Institutional Division. Lee explained J.J.B. III, who was sixteen and a half, was discharged from the Louisiana juvenile prison in February 2020 and committed the current offenses, which are crimes against property, in January 2023 while on parole in Louisiana. Lee explained that J.J.B. III

was in detention and attending school when he ran from police and wrecked J.C.C.'s vehicle.

Lee testified J.J.B. III was smart, polite, articulate, and mature for his age. Lee explained J.J.B. III has a substance abuse problem and knowledge about guns. His prior record includes illegal possession of a handgun, illegal possession of stolen property, and theft of a firearm. Lee also explained that she received a report showing while in Louisiana, J.J.B. III had been placed in a boy's home and committed to a facility, so the Texas Juvenile Probation Department could offer him no more help than he had already received in Louisiana. Lee testified that based on the multiple charges following J.J.B.'s January 15, 2023 arrest and J.J.B. III's record, in her opinion the likelihood that J.J.B. III is capable of being rehabilitated through programs offered by or in coordination with those of the Juvenile Probation Department is remote. Lee explained that in her opinion, J.J.B. III's conduct was willful, aggravating, and could lead to violence, and that she thought it would be in the community's best interest to treat him as an adult.

Joe Evans ("Evans"), an intervention specialist with the IEA program, testified he is a mentor who intervenes on behalf of youth to ensure they correct their behavior after they are detained. Evans testified he was working with J.J.B. III, who reads a lot, and he meets with him twice a week to visit and play cards and games. Evans explained that J.J.B. III was receptive to intervention, and based on his alleged

offenses, there was a possibility that he could be admitted to the program if he was placed on probation. Evans also explained he would like to continue working with J.J.B. III in the juvenile system and not see him certified as an adult, and he would recommend J.J.B. III for the program, which was unavailable where J.J.B. III lived in Louisiana. Evans testified J.J.B. III was sharper than the usual kids he deals with in the program. Evans did not have an opinion on J.J.B. III being certified as an adult.

J.J.B. III's mother, who lives in Louisiana, testified that she was at the hospital visiting her newborn grandson when J.J.B. III committed the current offenses. J.J.B. III's mother explained she is a member of Family and Friends of Louisiana's Incarcerated Children ("FFLIC") and the assistant lead for the Lafayette chapter. According to her, the program's goal is to represent children and to offer services and mentorship programs, programs in which J.J.B.'s mother claimed that her son was qualified to enroll. She explained that J.J.B. III was not involved with the mentorship program when he was at the boy's home in Louisiana, and she claimed the Louisiana Office of Juvenile Justice did not offer him the services that she thought he needed. J.J.B. III's mother testified that her son should not be tried as an adult for several reasons: in her opinion he is immature, lacks a consistent father figure, and was pressured by older kids whom he considered to be his peers when they brought him to Texas.

Jennifer Landry, a youth advocate for FFLIC and founder of Speaking 2 Inspire thru Experience Program, testified that J.J.B. III would benefit from her program as well as other available programs. Chad Landry ("Chad"), an advocate and chapter lead for FFLIC and founder of Speaking 2 Inspire thru Experience and Bridging the Gap, testified that J.J.B. III would benefit from his mentoring programs. Chad testified that J.J.B. III has a good heart and he would like the opportunity to mentor him and show him a better way.

The juvenile court signed a Waiver of Jurisdiction and Order of Transfer to Criminal Court, finding the allegations are felony grade offenses against persons or property and there is probable cause that J.J.B. III committed the offenses and there have been no previous adjudications. The juvenile court found J.J.B. III was sophisticated and mature enough to be treated as an adult, and it found that the prospect of the public's safety, the lack of time for the use of juvenile justice services, and J.J.B. III's record and history warranted the transfer. In support of the discretionary transfer, the juvenile court found that J.J.B. III had: (1) a history of school referrals and Student Discipline Reports; (2) six incident reports while in detention; (3) a history of marijuana use and knowledge of firearms; (4) a previous charge of possession of a stolen firearm; (5) a prior probation revocation based on a new charge of aggravated assault and his placement in a Louisiana boy's home; and (6) a recent release from a boy's home in Louisiana. Concerning J.J.B. III's

likelihood of rehabilitation using available procedures, services, and facilities, the juvenile court made these findings in support of discretionary transfer: (1) insufficient time to rehabilitate in a manner to adequately protect the public based on the level of charged offenses; (2) the alleged crimes are so egregious and aggravated that the psychological evaluation and reports show he will not be amenable to rehabilitation efforts; and (3) J.J.B. III's history and record make the likelihood of rehabilitation doubtful. The juvenile court waived jurisdiction and transferred J.J.B. III to criminal district court to be dealt with as an adult due to the aggravated character of the felony offenses, the seriousness of the offenses to the community, J.J.B. III's willful conduct, pattern of adult living and repeated offenses, emotional attitude, need for a controlled structured facility, and remote likelihood of rehabilitation.

## ANALYSIS

In a single issue, J.J.B. III complains the juvenile court erred by waiving jurisdiction and transferring his case to criminal district court when there is no evidence that the Jefferson County Juvenile Probation Department exhausted all means to rehabilitate him. *See id*. §§ 54.02, 56.01(a), (c)(1)(A). Specifically, J.J.B. III complains the juvenile court abused its discretion by failing to follow the Progressive Sanctions Model under Chapter 59 of the Texas Family Code, and if it had done so, the maximum disposition would have been to place him on intensive

8

supervision with a monitor in his mother's custody or in placement. *See id.* §§ 59.001–.015. J.J.B. III also complains there is insufficient evidence establishing he committed the offenses or that he was a threat to the community.

If, after an evidentiary hearing, a juvenile court determines that certain requirements are satisfied, it may waive its jurisdiction and transfer a child to the district court for criminal proceedings. *Id.* § 54.02(a), (c); *Matter of C.M.M.*, 503 S.W.3d 692, 700 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The statutory requirements for a juvenile court to waive its exclusive original jurisdiction and transfer a child to criminal district court include:

> (1) the child is alleged to have violated a penal law of the grade of felony;
>
> (2) the child was:
>
> > . . .
>
> > (B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, an no adjudication hearing has been conducted concerning that offense; and
>
> (3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

Tex. Fam. Code Ann. § 54.02(a).

In making a determination under section 54.02(a)(3), the juvenile court shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f). "Any combination of these criteria may suffice to support a waiver of jurisdiction; not every criterion need weigh in favor of transfer." *Matter of C.M.M.*, 503 S.W.3d at 701 (citation omitted).

We review a juvenile court's decision to waive its exclusive original jurisdiction and transfer a case to criminal district court using a two-step process. *Bell v. State*, 649 S.W.3d 867, 887 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd). First, we review the juvenile court's finding using the traditional evidentiary sufficiency review. *Id.* (citations omitted). "In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the juvenile court's findings and disregard contrary evidence unless a reasonable factfinder could not reject it." *Id.* (citations omitted); *Matter of C.R.*, 571 S.W.3d 849, 857 (Tex. App.—Houston [1st Dist.] 2018, no pet.). If there is more than a scintilla of evidence to support the juvenile court's findings, the evidence is legally sufficient. *Bell*, 649

S.W.3d at 887. In reviewing the factual sufficiency of the evidence, we consider all the evidence to determine whether the juvenile court's findings conflict with the great weight and preponderance of the evidence to be clearly wrong or unjust. *Id.*; *Matter of C.R.*, 571 S.W.3d at 857 (citation omitted).

If the juvenile court's findings are supported by legally and factually sufficient proof, we then review the ultimate waiver decision under an abuse-of-discretion standard. *Collins v. State*, 516 S.W.3d 504, 520 (Tex. App.—Beaumont 2017, pet. ref'd) (citations omitted); *see also Matter of A.M.*, 577 S.W.3d 653, 659 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citations omitted). In applying that standard, we conduct our own analysis of the evidence and determine whether the juvenile court acted without reference to the guiding rules or principles such that its decision to transfer the case was arbitrary based on the evidence. *See Collins*, 516 S.W.3d at 520 (citation omitted); *see also Bell*, 649 S.W.3d at 887.

The juvenile court found there is probable cause to believe J.J.B. III committed the offenses of evading arrest with a vehicle, unauthorized use of a motor vehicle, and theft of a firearm, which are all state jail felonies. J.J.B. III argues the evidence is insufficient to support the juvenile court's findings that there was probable cause he committed the alleged offenses. *See* Tex. Fam. Code Ann. § 54.02(a)(3).

In evaluating a probable cause determination, we consider whether there are sufficient facts and circumstances to support a prudent person's belief that the accused juvenile committed the offense. *See Matter of C.R.*, 571 S.W.3d at 858. "The probable-cause standard 'requires more than mere suspicion but less evidence than needed to support a conviction or support a finding by a preponderance of the evidence.'" *Id.* (quoting *Matter of C.M.M.*, 503 S.W.3d at 702); *see Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997) (citation omitted) (stating probable cause is based on factual and practical consideration of everyday life on which reasonable and prudent people act). In determining probable cause, courts apply a "'totality-of-the circumstances analysis[.]'" *Matter of C.R.*, 571 S.W.3d at 858 (citation omitted).

In reaching its probable-cause determinations, the juvenile court considered, among other things, the testimony and documentary evidence submitted at the certification hearing as described above. J.J.B. III was charged with unauthorized use of a vehicle—that he intentionally and knowingly operated a motor-propelled vehicle, an automobile owned by J.C.C., without J.C.C.'s effective consent. A person commits the offense of unauthorized use of a vehicle if he intentionally or knowingly operates another's motor-propelled vehicle without the effective consent of the owner. Tex. Penal Code Ann. § 31.07(a). The evidence shows J.J.B. III operated J.C.C.'s F-150 without J.C.C.'s effective consent.

J.J.B. III was charged with evading arrest/detention with a vehicle—that he did then and there intentionally flee from J. Silva, the Complainant, a peace officer lawfully attempting to detain the defendant and the defendant did then and there know that Complainant was a peace officer attempting to lawfully detain him and the defendant used a vehicle while in flight against the peace and dignity of the State. A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. *Id*. § 38.04(a). The evidence shows that J.J.B. III was driving J.C.C.'s F-150 at speeds exceeding 100 miles per hour when deputies activated their emergency lights on clearly marked patrol units, and rather than pulling over, J.J.B. fled for several miles and crashed the vehicle.

J.J.B. III was also charged with two counts of theft of a firearm—that J.J.B. III did then and there intentionally and knowingly appropriate property, by acquiring and exercising control of corporeal personal property, a firearm owned by D.C., with the intent to deprive D.C. of the property, and without the effective consent of D.C. A person commits the state jail felony offense of theft if he unlawfully appropriates property with intent to deprive the owner of property and the said property stolen is a firearm. *Id*. § 31.03(a), (e)(4)(C). The evidence shows that when deputies removed J.J.B. III from J.C.C.'s vehicle, he had two firearms, a Taurus 9mm and Sig Sauer

13

.22, on his person. D.C. reported his two firearms were stolen out of his vehicles the same night J.J.B. III took J.C.C.'s vehicle.

After considering the totality of the circumstances and viewing the evidence in the light most favorable to the juvenile court's findings, we conclude there is more than a scintilla of evidence to support the trial court's findings that there is probable cause to believe J.J.B. III committed the alleged offenses of evading arrest with a vehicle, unauthorized use of a motor vehicle, and theft of a firearm. *See Bell*, 649 S.W.3d at 887; *Matter of C.R.*, 571 S.W.3d at 858–59; *Matter of C.M.M.*, 503 S.W.3d at 702; *see also Guzman*, 955 S.W.2d at 87. After considering all the evidence, we conclude the juvenile court's findings do not conflict with the great weight and preponderance of the evidence to be clearly wrong or unjust. *See Bell*, 649 S.W.3d at 887; *Matter of C.R.*, 571 S.W.3d at 857. We conclude the juvenile court's findings that there is probable cause to believe J.J.B. III committed the current offenses are supported by legally and factually sufficient evidence.

J.J.B. III also argues the evidence is insufficient to support the juvenile court's finding that he was a threat to the community. In making its determination to waive its exclusive original jurisdiction and transfer J.J.B. III to criminal district court, the juvenile court shall consider the welfare of the community and prospects of adequate protection of the public. *See* Tex. Fam. Code Ann. § 54.02(a)(3), (f)(4). The record shows the juvenile court considered the prospects of adequate protection of the

14

public and found that the public's safety and welfare of the community warranted the transfer for adult criminal prosecution. Lee testified that based on the totality J.J.B. III's current actions and past record, the public's protection was remote and that it was in the community's best interest to transfer him to the adult system. The evidence shows that along with his two current charges for theft of a firearm, J.J.B. III has a knowledge about guns and a prior record that included illegal possession of a handgun and theft of a firearm. The evidence also shows J.J.B. III drove at rates of speed exceeding 100 miles per hour while fleeing from police, and the pursuit only ended because he crashed the vehicle.

After considering the totality of the circumstances and viewing the evidence in the light most favorable to the juvenile court's finding, we conclude there is more than a scintilla of evidence to support the trial court's finding that the public's safety and welfare of the community warranted J.J.B. III's transfer for adult criminal prosecution. *See Bell*, 649 S.W.3d at 887; *Matter of C.R.*, 571 S.W.3d at 858–59; *Matter of C.M.M.*, 503 S.W.3d at 702. After considering all the evidence, we conclude the juvenile court's finding does not conflict with the great weight and preponderance of the evidence to be clearly wrong or unjust. *See Bell*, 649 S.W.3d at 887; *Matter of C.R.*, 571 S.W.3d at 857. We conclude the juvenile court's finding that the public's safety and welfare of the community warranted J.J.B. III's transfer is supported by legally and factually sufficient evidence.

J.J.B. III complains there is no evidence that the Jefferson County Juvenile Probation Department exhausted all means to rehabilitate him. In making its determination to waive its exclusive original jurisdiction and transfer J.J.B. III to criminal district court, the juvenile court is required to consider the likelihood of the rehabilitation of the child using the procedures, services, and facilities that are currently available to the juvenile court. *See* Tex. Fam. Code Ann. § 54.02(f)(4). The juvenile's age at the time of the transfer "hearing is relevant to the 'likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court'" because the juvenile court's resources are designed to assist and rehabilitate children, not adults. *See Bell*, 649 S.W.3d at 896–97 (citations omitted).

The trial court found that the likelihood of reasonable rehabilitation of J.J.B. III using the procedures, services, and facilities currently available to the juvenile court are in doubt. After reviewing and considering the prospects of J.J.B. III's rehabilitation, the trial court made these findings in support of discretionary transfer: (1) there was insufficient time for the juvenile court to use the available procedures, services, and facilities to rehabilitate J.J.B. III due to the level of the charged offenses, his current age of sixteen, and the Family Code's restriction that he could be placed only on probation until his nineteenth birthday; (2) the Family Code's restriction that he may be incarcerated only until his nineteenth birthday provided

insufficient time for the juvenile court to provide the necessary services to rehabilitate J.J.B. III in a manner that is adequate to protect the public; and (3) based on the psychological evaluation, reports, and J.J.B. III's alleged crimes, which are so egregious and aggravated, he would not be amenable to the juvenile court's rehabilitation efforts.

The evidence shows that J.J.B. III had a criminal history in Louisiana where he was placed in a boy's home and committed to a facility. The evidence also shows J.J.B. III violated his probation in Louisiana by committing aggravated assault, and he committed the current offenses while on parole in Louisiana. Lee testified that the Texas Juvenile Probation Department could not offer any help that J.J.B. III had not already received in Louisiana, and there was nothing available to address J.J.B. III's situation in the time allowed. Lee testified that based on J.J.B. III's current offenses and history, the likelihood of any rehabilitation was remote. While the juvenile court heard J.J.B. III's mother testify that, in her opinion, Louisiana had not offered her son the services that she thought he needed, as well as her testimony and the testimony from several witnesses stating that J.J.B. III would benefit from intervention and a mentoring program, the juvenile court could have determined that a mentoring program would not provide the services necessary to sufficiently rehabilitate J.J.B. III to offer adequate protection to the public if allowed to remain in the juvenile system.

After considering the totality of the circumstances and viewing the evidence in the light most favorable to the juvenile court's finding, we conclude there is more than a scintilla of evidence to support the trial court's finding that the likelihood of reasonable rehabilitation of J.J.B. III using the procedures, services, and facilities currently available to the juvenile court are in doubt. *See Bell*, 649 S.W.3d at 887, 896–97; *Matter of C.R.*, 571 S.W.3d at 860; *Matter of C.M.M.*, 503 S.W.3d at 703. After considering all the evidence, we conclude the juvenile court's finding does not conflict with the great weight and preponderance of the evidence to be clearly wrong or unjust. *See Bell*, 649 S.W.3d at 887; *Matter of C.R.*, 571 S.W.3d at 857. We conclude the juvenile court's finding that the likelihood of reasonable rehabilitation of J.J.B. III using the procedures, services, and facilities currently available to the juvenile court are in doubt is supported by legally and factually sufficient evidence.

As for J.J.B. III's complaint that the juvenile court abused its discretion by failing to follow the Progressive Sanctions Model, we note that a juvenile may not appeal based on a departure from the Sanction Level Assignment Model provided by Chapter 59 of the Texas Family Code. *See* Tex. Fam. Code Ann. § 59.014(3); *In re A.G.*, 292 S.W.3d 755, 762 n.2 (Tex. App.—Eastland 2009, no pet.); *see also* Tex. Fam. Code Ann. § 59.003 (Sanction Level Assignment Model). Section 59.014 provides that a child may not appeal based on "a departure from the sanction level assignment model provided by this chapter[.]" Tex. Fam. Code Ann. § 59.014(3).

Nothing in Chapter 59 prohibits imposing appropriate sanctions that are different from those provided at any sanction level. *In re C.C.*, 13 S.W.3d 854, 858 (Tex. App.—Austin 2000, no pet.) (citing Tex. Fam. Code Ann. § 59.003(e)). A juvenile may not appeal a departure from the Sanction Level Assignment Model because it is treated more as a guide than a mandatory classification scheme. *In re J.M.*, 287 S.W.3d 481, 496 n.8 (Tex. App.—Texarkana 2009, no pet.) (citing Tex. Fam. Code Ann. § 59.014(3)); *see also In re C.C.*, 13 S.W.3d at 858; *In re A.G.*, 292 S.W.3d at 762 n.2. Since the Family Code does not permit a juvenile to bring this complaint on appeal, we need not address it. *See* Tex. R. App. P. 47.1.

Having concluded that the juvenile court's complained of findings are supported by legally and factually sufficient evidence, we also conclude the juvenile court did not abuse its discretion by waiving jurisdiction and transferring J.J.B. III's case to criminal district court as its decision was not arbitrary based on the evidence. *See Collins*, 516 S.W.3d at 520; *see also Bell*, 649 S.W.3d at 887; *Matter of A.M.*, 577 S.W.3d at 659. Accordingly, we overrule J.J.B. III's sole issue and affirm the juvenile court's Waiver of Jurisdiction and Order of Transfer to Criminal Court.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on May 6, 2024
Opinion Delivered May 23, 2024

Before Golemon, C.J., Horton and Wright, JJ.

19