**Opinion issued September 7, 2023.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-22-00792-CV

———————————

## IN THE MATTER OF C.P.R.

---

**On Appeal from the County Court at Law No. 4 & Probate Court
Brazoria County, Texas
Trial Court Case No. JV24089**

---

## MEMORANDUM OPINION

C.P.R., a juvenile, was charged by petition with delinquent conduct with the offenses of aggravated sexual assault of a child, indecency with a child by contact, and injury to a child. On the State's motion to certify C.P.R. as an adult to face criminal charges in criminal district court, the juvenile court issued an order waiving its original jurisdiction and transferring three of C.P.R.'s cases to the criminal district

court. In this accelerated appeal, C.P.R. argues the juvenile court abused its discretion by waiving its jurisdiction over these three cases because the evidence is legally insufficient to support the juvenile court's finding "there is probable cause to believe [C.P.R.] committed the offense alleged."

We affirm the juvenile court's order.

## Background

On April 18, 2022, Detective Evan Bissett ("Detective Bissett") and Officer Christopher Rivera ("Officer Rivera") with the Lake Jackson Police Department were dispatched to McLean Park in response to a sexual assault in progress. After speaking with witnesses at the park, Officer Rivera arrested fifteen-year-old C.P.R. and transported him to the Brazoria County Juvenile Detention Center ("Detention Center").

### A. Allegations Against C.P.R. in the State's First Amended Petition

In its First Amended Petition, the State alleged:[1]

That on or about the 15th day of April, 2022, in Brazoria County, Texas, [C.P.R.] did engage in delinquent conduct by violating Section 21.11 of the Texas Penal Code punishment by imprisonment or confinement, to-wit: did then and there with intent to arouse or gratify the sexual desire of respondent, intentionally or knowingly engage in sexual

---

[1] To protect the identity of the alleged child victims, we will refer to the children and their family members by their initials. *See* TEX. CONST. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.10(a)(3), (b) (making names of minors at time offense was committed "sensitive information" not to be contained in court filings).

contact with [J.O.], a child younger than 17 years and not the spouse of [C.P.R.], by touching the genitals of said child;

That on or about the 15th day of April, 2022, in Brazoria County, Texas, [C.P.R.] did engage in delinquent conduct by violating Section 22.021 of the Texas Penal Code punishable by imprisonment or confinement, to-wit: did then and there intentionally or knowingly cause the penetration of the sexual organ, of [J.O.], a child younger than fourteen (14) years of age and not [C.P.R's] spouse, by [C.P.R.'s] finger;

That on or about the 18th day of April, 2022, in Brazoria County, State of Texas, said [C.P.R.] did engage in delinquent conduct by violating section 22.021 of the Texas Penal Code punishable by imprisonment or confinement, to-wit: did then and there intentionally or knowingly cause the penetration of the sexual organ of [L.T.], a child younger than fourteen (14) years of age and not [C.P.R.'s] spouse, by [C.P.R.'s] finger;

That on or about the 18th day of April, 2022, in Brazoria County, State of Texas, [C.P.R.] did engage in delinquent conduct by violating section 22.04 of the Texas Penal Code punishable by imprisonment or confinement, to-wit: did then and there intentionally or knowingly cause bodily injury to [S.B.], a child fourteen (14) years of age or younger, by grabbing [S.B.'s] hand—causing pain.

## B.    Transfer Hearing

On October 19, 2022, the juvenile court held a hearing on the State's motion to certify C.P.R. as an adult to face criminal charges in criminal district court. Detective Bissett, Officer Rivera, Dr. Anna Buckingham ("Dr. Buckingham"), and Juvenile Probation Officer Melissa Rodriguez ("Officer Rodriguez") testified at the hearing.

Detective Bissett testified that he was dispatched to McLean Park in response to a "possible sexual assault of a child." When he arrived at the park, officers on

scene advised him "that they had multiple reports, from parents and a grandmother, of two children that had been possibly assaulted by a white male that was described as wearing dark jeans, dark shirt, and a ball cap, that had left the scene on a bicycle." Detective Bissett spoke to G.S. who told him that she had seen L.T. playing in the park with other children, including a teenage boy. G.S., a janitorial staff member at a local school, told Detective Bissett that she recognized the teenage boy "as a former student and knew that he was currently a freshman at the local high school." According to G.S., L.T. ran to her and told her that she "had been touched by a boy" and "it hurt."

Detective Bissett testified that L.T. had been taken to a local hospital where she was examined by a sexual assault nurse examiner ("SANE"). The SANE told Detective Bissett that L.T. had told her that she had been "touched inside of her underwear, that her pants had been pulled down." According to the SANE, L.T. had indicated "digital penetration of her private area" and the SANE had observed "redness and inflammation consistent with vaginal trauma" and "penetration."

Detective Bissett also spoke to A.B. who informed him that her daughter, S.B., had told her that the "same boy" who had touched L.T. had also "grabbed her and tried to pull her into the bathroom." S.B. reported that the boy grabbed her by the left arm and "it had hurt when he grabbed her and she tried to get away." Detective

4

Bissett testified that when he looked at S.B.'s arm, he observed "very mild redness there at the time but no—no bruising."

After speaking with G.S. and A.B., Detective Bissett spoke to Officer Rivera who informed Detective Bissett that he had detained a young man matching the description. Officer Rivera stated that when he approached the young man and asked him if he "had been over at the park," the young man "said that he had been and that he didn't mean to hurt anybody." Detective Bissett identified C.P.R. as the young man Officer Rivera had detained and who was sitting in Officer Rivera's patrol car.

Detective Bissett testified that A.O. came to the police department a few days later. A.O. reported that he and his two daughters were at McLean Park the prior Friday and his daughters had been playing with a young teenage male. After they left the park, A.O.'s daughter, J.O., told him that "the boy they had played with was weird, that he had done some really weird things." J.O. told her father that the boy had "touched her and asked her to take her—her clothes off." When Detective Bissett asked A.O. to describe the young man he had seen at the park that day, A.O. "gave the exact clothing description" the officers had "originally received" about C.P.R. A.O. told Detective Bissett that he had been playing at the park that day with a drone with a camera and that the boy had expressed an interest in the drone. A.O. showed Detective Bissett a photo the drone had captured of the young man and

5

Detective Bissett testified that he "immediately recognized the young man in the photo to be [C.P.R.], wearing the same clothes that he had been seen in on Monday."

L.T., S.B., and J.O. were interviewed at the Child Advocacy Center. During her interview, which Detective Bissett observed, J.O. "described having been playing with [C.P.R.]" and when they were on the top level of the play set, she had laid down and C.P.R. "had gotten on top of her and placed his hand inside the front of her underwear." J.O. reported that "when [C.P.R.'s] hand was in her pants, [she] could feel his fingers moving." Detective Bissett testified, based on his offense report, that J.O. reported that she told C.P.R. to stop and "after he stopped, he told her to follow him to the bathroom," where C.P.R. told J.O. "to take her pants off." J.O. ran away when C.P.R. was not looking.

Detective Bissett testified that L.T. said she had been playing tag at the park and at "one point while she was running and chasing people, [C.P.R.] pulled her into the bathroom area." After consulting his offense report, Detective Bissett testified that L.T. claimed that when they were in the bathroom, C.P.R. "touched [her] inappropriately in the private area." Detective Bissett testified that L.T. was 5 years old, and S.B. was 7 or 8 years old.

Detective Bissett's offense report for L.T. and S.B. was admitted into evidence as Petitioner's Exhibit 2 over C.P.R.'s hearsay objection. Detective Bissett testified that he also prepared a second offense report for J.O., who was 8 years old.

J.O.'s offense report was admitted into evidence as Petitioner's Exhibit 7 over C.P.R.'s hearsay objection.

Officer Rivera testified that he was dispatched to McLean Park on Monday, April 18, 2022. When he arrived at the park, Officer Rivera spoke to G.S., who told him that her granddaughter, LT., and L.T.'s friend, S.B., "were touched on their private parts" by a juvenile white male with brown hair, who was wearing a black cap, black shirt, and blue jeans and riding a bike. G.S. told Officer Rivera that the juvenile "ran off towards the community center area of the park" after L.T. and S.B. yelled at him. Officer Rivera went to the community center where he "observed a subject matching that description riding his bike." When Officer Rivera approached the suspect and asked him "if he was involved in the incident," the suspect told Officer Rivera that he "didn't mean to hurt the little girls." Officer Rivera testified that the suspect was "immediately apologetic" and "his hands [were] shaking." Officer Rivera then detained the young man and drove him back to the park. Officer Rivera identified C.P.R. in court as the young man he detained at the community center.

Officer Rodriguez, C.P.R.'s supervisor at the Detention Center, prepared the Brazoria County Juvenile Justice Predisposition Report ("Predisposition Report"), which was admitted as Petitioner's Exhibit 13. The Predisposition Report includes Officer Rodriguez's 7-page summary and an appendix with (1) both of Detective

Bissett's offense reports, (2) rule violation reports from the Detention Center, (3) C.P.R.'s school records, (4) C.P.R.'s records from Child Protective Services, (5) C.P.R.'s psychiatric assessment, (6) C.P.R.'s psychosexual evaluation, (7) C.P.R.'s psychological evaluation, and (8) the Psychological Evaluation for Purpose of Transfer to Criminal Court prepared by Dr. Buckingham. C.P.R., who did not object to the admission of the summary portion of the Predisposition Report, objected to the admission of the Predisposition Report's appendix on hearsay grounds. The court admitted Petitioner's Exhibit 13 in its entirety because Officer Rodriguez had relied on the documents included in the appendix in preparing the report.

In the Predisposition Report, Officer Rodriguez summarized the evidence supporting each charged offense against C.P.R.:

> OFFENSE SUMMARY: AGGRAVATED SEXUAL ASSAULT OF A CHILD (F1)
>
> *See Appendix A for offense reports.
>
> On Monday, April 18, 2022, at around 1230 hours, Reporting Officer Rivera was dispatched to 93 Lake Road, Lake Jackson, Texas, 77566, in reference to a sexual assault in progress. Officer Rivera arrived on scene and was met by [G.S.]. [G.S.] advised that her granddaughter, [L.T.] (5 y.o.) and her granddaughters' friend, [S.B.] (7 y.o.) were lured into a public bathroom stall by a white male in a black shirt, black cap and blue jeans who then pulled [L.T.] (5 y.o.) inside, pulled her underwear off, and penetrated her with his finger. [S.B.] (7 y.o.) was grabbed by her back by the same male who attempted to pull her into a bathroom stall. Officer Rivera found a male matching the description, identified as [C.P.R.]. [C.P.R.] advised he was just playing with the girls, but he did touch them. Officer Rivera then placed [C.P.R.] under

arrest and transported him to Brazoria County Juvenile Justice Department.

OFFENSE SUMMARY: INJURY TO A CHILD (F2)

On Monday, April 18, 2022, at around 1233 hours, Reporting Officer Cervantes, responded to a sexual assault in progress at Maclean Park, at 93 Lake Road, Lake Jackson, Texas, 77566. Information was obtained from call notes of a female informing that her granddaughter had just been sexually assaulted by a male later identified as [C.P.R.]. Upon arrival contact was made with the original caller, [G.S.], and a second female, named [A.B.], and her daughter, [S.B.] (7 y.o.). [A.B.] informed that her daughter too had been assaulted. [A.B.] informed that the same male grabbed [S.B.] while on the play area. [A.B.] observed the male chasing the smaller children, thinking it was odd but that maybe he was just a bigger kid with his parents here in the park. [A.B.] informed that [S.B.] (7 y.o.) came to her and told her that the male grabbed her by the right thigh and lower back, pulling [S.B.] (7 y.o.) towards him. [S.B.] (7 y.o.) was scared and ran to get away from the male. [A.B.] informed that [S.B.] (7 y.o.) told her it hurt when the male grabbed her.  [A.B.] refused EMS to check [S.B.] (7 y.o.) after [S.B.] (7 y.o.) informed she was ok. [A.B.] informed she wished to pursue with charges against the male that she would be providing a sworn statement at a later time as she had to pick up other children from daycare.

OFFENSE SUMMARY: AGGRAVATED SEXUAL ASSAULT OF A CHILD (F1), INDECENCY WITH A CHILD (F2)

On Thursday, April 21, 2022, at about 11:10 am, Detective Bissett, was dispatched to the Lake Jackson Department Lobby, in reference to a follow up investigation, regarding LJPD Case 2022-00716. Detective Bissett met with [A.O.], who advised that he had been at the Maclean Park on Friday, April 15, 2022, with his daughter, [J.O.] (8 y.o.), between the hours of 1:00pm and 3:00pm. [A.O.] advised that while they were at the park, [J.O.] (8 y.o.) had been playing with "an older boy." [A.O.] advised that after about 3:00pm, he and [J.O.] (8 y.o.) left the park, and that the boy in question had already left on a bicycle. [A.O.] advised that while he was driving, [J.O.] (8 y.o.) stated that "that boy was weird." [A.O.] asked [J.O.] (8 y.o.) to explain what she meant

9

and advised that [J.O.] (8 y.o.) told him that the boy had pulled her into the bathroom area at the park and told her to take her pants off. [A.O.] advised that he began to ask [J.O.] (8 y.o.) if the boy had touched her in anyway, or if she had taken her pants off. [A.O.] advised that [J.O.] (8 y.o.) denied having removed her pants and stated that the boy had not touched her. [A.O.] stated that due to knowing that the boy had already left the scene and given that [J.O.] (8 y.o.) stated that the boy had not touched her, he left the issue alone. However, upon seeing the Facebook post describing a teenage boy assaulting a young female at Maclean Park just a few days later, [A.O.] believed that the situation maybe more serious that he had believed on Friday. Detective Bissett asked [A.O.] to describe the subject, and he stated the boy was believed to be around the age of 10-12, and that he was riding a bicycle. [A.O.] advised that he had been operating a drone that day and he had a photo of the subject. [A.O.] pulled up a screenshot on his phone and handed the phone to detective Bissett, who immediately recognized the subject in the photos as [C.P.R.]. On April 26, 2022, at approximately 10:10 am, a forensic interview was conducted by Kristi Belloumini at the Brazoria County Alliance for Children, with [J.O.]. During the interview, [J.O.] (8 y.o.) spoke about going to the park with her parents and also playing with friends at school. When asked about the park, [J.O.] (8 y.o.) spoke about going to Maclean Park with her dad before Easter and playing hide and seek with her sister [V.] and an older boy, who had been identified as [C.P.R.]. When asked about her interactions with [C.P.R.], [J.O.] (8 y.o.) initially stated that she did not want to talk about it because it was "disgusting." [J.O.] (8 y.o.) advised that she doesn't like to talk or think about it, because she didn't like having the thoughts in her head. Upon being asked again about the things that happened at McLean Park, [J.O.] (8 y.o.) advised that [C.P.R.] had gone up into the top of the playground where she was hiding and laid down to hide with her. [J.O.] (8 y.o.) then advised that [C.P.R.] put his hand inside of her underwear and touched her private area. [J.O.] (8 y.o.) raised her right hand indicating that to be the hand that [C.P.R.] used and said that he touched her in the front under her underwear. [J.O.] (8 y.o.) further advised that when [C.P.R.] was touching her, she could feel his fingers moving. [J.O.] (8 y.o.) would not clarify whether [C.P.R.] had inserted his fingers inside of her or if the touching was external only. [J.O.] stated that she told [C.P.R.] to stop, and that after he stopped, he told her to follow him to the bathroom. [J.O.] (8 y.o.) advised that once they had reached the bathroom area, [C.P.R.] told her

to take off her pants. [J.O.] (8 y.o.) advised that she told [C.P.R.] no and he kept telling her to take off her pants. [J.O.] (8 y.o.) stated that when [C.P.R.] turned to look at something else, she left the bathroom.

Dr. Buckingham, a forensic, clinical, and medical psychologist with the Brazoria County Juvenile Justice Department, testified that she performed a diagnostic study, a social evaluation, and a full investigation of C.P.R.'s circumstances and offenses. Dr. Buckingham's evaluation was admitted without objection (Petitioner's Exhibit 8).

At the conclusion of the hearing, the juvenile court found, among other things, that there is probable cause to believe C.P.R. committed three of the four offenses alleged in the First Amended Petition: (1) aggravated sexual assault against L.T., (2) indecency with a child against J.O., and (3) injury to a child against S.B. The juvenile court made detailed findings in the Waiver of Jurisdiction and Order of Transfer to Criminal Court.

## Issue 1

In his sole issue, C.P.R. argues the juvenile court abused its discretion by waiving its jurisdiction over his three cases because the evidence is legally insufficient to support the juvenile court's finding "there is probable cause to believe [C.P.R.] committed" the alleged offenses of aggravated sexual assault against L.T., indecency with a child against J.O., and injury to a child against S.B. According to C.P.R., there is legally insufficient evidence to support the juvenile court's probable

11

cause finding because the State "presented no legitimate evidence" and no "direct evidence from the alleged victims was presented to the Court, only hearsay from a parent, what the parent was told, then told to the officer, then told again in Court." C.P.R. also asserts that the alleged victims' failure to testify violated his right to confrontation under the Due Process Clause of the Fourteenth Amendment. *See In re M.P.*, 220 S.W.3d 99, 109 (Tex. App.—Waco 2007, pet. denied) (stating Juvenile Justice Code expressly recognizes that juveniles must be provided "fair hearing" and his "constitutional and other legal rights" must be "recognized and enforced") (quoting TEX. FAM. CODE § 51.01(6)); *id.* (holding "juvenile has a limited right of confrontation under the Due Process Clause of the Fourteenth Amendment rather than under the Sixth Amendment").

## A.    Standard of Review

We apply a two-prong standard of review with respect to a juvenile court's order waiving its exclusive jurisdiction. First, we review the sufficiency of the evidence supporting the juvenile court's findings under Texas Family Code Section 54.02, and if the juvenile court's findings are supported by sufficient evidence, then we review the juvenile court's ultimate waiver decision under an abuse-of-discretion standard. *In re C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see also In re M.S.*, No. 01-21-00374-CV, 2022 WL 17981563, at *4 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, no pet.) (mem. op.).

A juvenile court abuses its discretion when it acts without reference to any guiding rules and principles. *In re M.S.*, 2022 WL 17981563, at *4. In other words, a juvenile court abuses its discretion "when its decision to transfer is essentially arbitrary, given the evidence upon which it was based." *Id.* (quoting *In re C.M.M.*, 503 S.W.3d at 701). "By contrast, a waiver decision representing a reasonably principled application of the legislative criteria generally will pass muster under this standard of review." *Id.* (quoting *In re C.M.M.*, 503 S.W.3d at 701) (internal quotation omitted).

Juvenile cases are reviewed under the civil standards of review for legal and factual sufficiency. *In re V.L.T.*, 570 S.W.3d 867, 869 (Tex. App.—El Paso 2018, no pet.). Under a legal sufficiency analysis, we view the evidence in the light most favorable to the court's findings and disregard contrary evidence unless a reasonable fact finder could not reject the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005); *see also In re C.R.*, 571 S.W.3d 849, 857 (Tex. App.—Houston [1st Dist.] 2018, no pet.). We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex.

13

2014).  Anything more than a scintilla of evidence is legally sufficient to support a finding.  *In re C.R.*, 571 S.W.3d at 857; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (stating more than scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions).

## B.    Applicable Law

Juvenile courts have exclusive original jurisdiction over cases involving delinquent conduct by children.  *See* TEX. FAM. CODE §§ 51.02(2)(b) (defining "[c]hild" as relevant here as "person who is . . . seventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct . . . as a result of acts committed before becoming 17 years of age"), 51.03(a)(1) (defining "[d]elinquent conduct" as "conduct, other than a traffic offense, that violates a penal law of this state or of the United States punishable by imprisonment or by confinement in jail").  When committed by a minor, aggravated sexual assault of a child, indecency with a child by contact, and injury to a child constitute delinquent conduct.  *See id.* § 51.03(a)(1); *see also* TEX. PENAL CODE §§ 21.11(a)(1) (defining indecency with child by contact), 22.021(a)(1)(B)(i), (2)(B) (defining aggravated sexual assault of child), 22.04(a)(3) (defining injury to child).

"A juvenile court may waive its exclusive original jurisdiction and transfer a juvenile case to the appropriate district court for criminal proceedings if certain statutory and constitutional requirements are met."  *Ex parte Thomas*, 623 S.W.3d

14

370, 372 (Tex. Crim. App. 2021). As relevant here, Texas Family Code Section 54.02(a) states that a juvenile court may waive its exclusive original jurisdiction and transfer a child's case to the criminal district court for criminal proceedings if:

(1)     the child is alleged to have violated a penal law of the grade of felony;

(2)     the child was:

    (A)     14 years of age or older at the time he is alleged to have committed the offense, if the offense is . . . a felony of the first degree, and no adjudication hearing has been conducted concerning that offense;

    (B)     15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, and no adjudication hearing has been conducted concerning the offense; and

. . .

(3)     after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

TEX. FAM. CODE § 54.02(a).[2] "At the transfer hearing the court may consider written reports from probation officers, professional court employees, guardians ad litem

---

[2]     C.P.R. does not appear to be challenging the juvenile court's finding "that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings." TEX. FAM. CODE § 54.02(a)(3).

15

appointed under Section 51.11(d), or professional consultants in addition to the testimony of witnesses." *Id.* § 54.02(e).

In evaluating a determination of probable cause under Section 54.029(a)(3), we consider whether there are sufficient facts and circumstances to support a prudent person's belief that the accused child committed the offense. *In re C.R.*, 571 S.W.3d at 858; *see also In re C.M.M.*, 503 S.W.3d at 702. Probable cause "requires more than mere suspicion but less evidence than that needed to support a conviction or support a finding by a preponderance of the evidence." *In re C.M.M.*, 503 S.W.3d at 702. Courts apply a "totality-of-the-circumstances" analysis to determine probable cause. *In re C.R.*, 571 S.W.3d at 858 (citations omitted).

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the sexual organ of a child under fourteen years of age by any means. TEX. PENAL CODE § 22.021(a)(1)(B)(i), (2)(B). A person commits indecency with a child by contact if, with a child younger than seventeen years of age, he engages in sexual contact with the child. *Id.* § 21.11(a)(1); *see id.* § 21.01(2) (defining "sexual contact," in part, as "any touching of . . . the genitals of another person with intent to arouse or gratify the sexual desire of any person"). A person commits injury to a child if he intentionally or knowingly by act causes bodily injury to a child. *Id.* § 22.04(a)(3); *see id.* § 1.07(a)(8) (defining "bodily injury" as "physical pain, illness, or any impairment of physical condition").

16

The State has the burden to produce evidence to establish waiver of jurisdiction is appropriate in a particular case. *In re T.S.*, 548 S.W.3d 711, 721 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A transfer hearing, however, is not held to determine the child's guilt or innocence; instead, it is held for "the purpose of establishing whether the child's and society's best interests are met by maintaining juvenile custody of the child or by transferring [the child] to district court for adult proceedings." *In re M.D.B.*, 757 S.W.2d 415, 417 (Tex. App.—Houston [14th Dist.] 1988, no pet.); *In re B.M.*, No. 01-18-00898-CV, 2019 WL 1388561, at *8 (Tex. App.—Houston [1st Dist.] Mar. 28, 2019, no pet.) (mem. op.).

## C. Due Process Clause

C.P.R. argues he has "a limited right of confrontation under the Due Process Clause of the Fourteenth Amendment, which requires a balancing test, which was violated due to the fact that no alleged victim's testimony was offered or confronted" at the hearing. *See In re M.P.*, 220 S.W.3d at 109 (holding "juvenile has a limited right of confrontation under the Due Process Clause of the Fourteenth Amendment rather than under the Sixth Amendment"). A failure to object to constitutional errors, including Due Process Clause violations, waives appellate review of those claims. *See Low v. Henry*, 221 S.W.3d 609, 619 (Tex. 2007) (concluding due process claim not preserved because defendant failed to raise claim before trial court); *In re I.N.A.*, No. 03-22-00206-CV, 2022 WL 4830785, at *4 (Tex. App.—Austin Oct. 4, 2022,

17

no pet.) (mem. op.) ("Due-process complaints in juvenile proceedings are subject to the general error preservation rules."). Because he did not raise a Due Process Clause challenge in the juvenile court, C.P.R. has waived this issue for appellate review. *See Low*, 221 S.W.3d at 619.

## D. Legal Sufficiency of the Evidence

C.P.R. argues the juvenile court abused its discretion by waiving its jurisdiction over his three criminal cases because the evidence is legally insufficient to support the juvenile court's finding "there is probable cause to believe [C.P.R.] committed" the alleged offenses of aggravated sexual assault against L.T., indecency with a child against J.O., and injury to a child against S.B. According to C.P.R., there is legally insufficient evidence to support the juvenile court's probable cause finding because the State "presented no legitimate evidence" and no "direct evidence from the alleged victims was presented to the Court, only hearsay from a parent, what the parent was told, then told to the officer, then told again in Court."

C.P.R. is not challenging any of the juvenile court's evidentiary rulings on appeal. That is, he does not argue on appeal that the juvenile court abused its discretion by admitting any testimony or exhibit, on any ground. Instead, C.P.R. argues we cannot, as part of our legal sufficiency analysis, consider Detective Bissett's testimony concerning the statements the complainants and their family members made to him because the evidence amounts to hearsay. This Court's

18

opinion in *In re B.M.*, No. 01-18-00898-CV, 2019 WL 1388561 (Tex. App.—Houston [1st Dist.] Mar. 28, 2019, no pet.) (mem. op.) is not only binding precedent, but it is also instructive. In that case, the State alleged that B.M. had committed seven separate felony offenses of aggravated robbery, one of which was perpetrated against Tran. On appeal, B.M. argued there was insufficient evidence to support the trial court's finding there was probable cause to believe B.M. had committed aggravated robbery against Tran because Tran "made no identification of B.M. at th[e] [transfer] hearing." 2019 WL 1388561, at *12. Although Tran did not testify at the transfer hearing, a police officer testified about the details of the alleged offense, as conveyed to him by Tran. *Id.* The *B.M.* Court noted that "because the transfer hearing is a nonadversary preliminary hearing, the juvenile court may rely upon hearsay as well as written and oral testimony in making its probable-cause findings." *Id.* (citing *Navarro v. State*, No. 01-11-00139-CR, 2012 WL 3776372, at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012 pet. ref'd) (mem. op., not designated for publication); *see also L.M.C. v. State*, 861 S.W.2d 541, 542 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (stating transfer hearing is "nonadversary preliminary hearing" and "appellant's rights will be fully protected when the case reaches trial"). The court explained that "a juvenile court may rely on the testimony of law enforcement officers to support a probable-cause finding, including testimony regarding any statements a complainant made to the officers." *In re B.M.*, 2019 WL

1388561, at *13. Relying on the officer's testimony, the court concluded there was more than a scintilla of evidence to support the juvenile court's finding that B.M. committed the offense of aggravated robbery against Tran. *Id.* at *14.

Section 54.02(e) of the Family Code also expressly provides that during the transfer hearing, juvenile courts are permitted to "consider written reports from probation officers, professional court employees, guardians ad litem appointed under Section 51.11(d), or professional consultants in addition to the testimony of witnesses." TEX. FAM. CODE § 54.02(e). This statute "provides an explicit exception to the hearsay rule in a transfer to criminal court proceeding." *In re J.A.W.*, 976 S.W.2d 260, 264 (Tex. App.—San Antonio 1998, no pet.).[3]

### 1. Aggravated Sexual Assault of Child against L.T.

At the hearing, Officer Rivera testified when he arrived at the park, he spoke to G.S., who told him that her granddaughter, L.T., and L.T.'s friend, S.B., who had been playing at the park, "were touched on their private parts" by a juvenile white male with brown hair, who was wearing a black cap, black shirt, and blue jeans and riding a bike. G.S. said that the young man ran towards the park's community center

---

[3] We note that C.P.R. did not object on hearsay grounds to the summary of the Predisposition Report prepared by Officer Rodriguez or to all of Detective Bissett's testimony. C.P.R. objected only to Detective Bissett's offense reports, some portions of Detective Bissett's testimony, and the documents included in the appendix to the Predisposition Report, none of which we rely upon in our legal sufficiency analysis.

area after L.T. and S.B. yelled at him. After speaking with G.S., Officer Rivera saw someone riding a bike at the community center who matched G.S.'s description of the suspect. When Officer Rivera asked the suspect, who Officer Rivera identified as C.P.R., "if he was involved in the incident," C.P.R. told Officer Rivera that he "didn't mean to hurt the little girls." Detective Bissett testified that G.S. told him that L.T., who had been playing in the park with a teenage boy, told her that she "had been touched by a boy" and "it hurt." The SANE who examined L.T. told Detective Bissett that L.T., who was 5 years old, told her that she had been "touched inside of her underwear, that her pants had been pulled down." According to the SANE, L.T. had indicated "digital penetration of her private area" and the SANE had observed "redness and inflammation consistent with vaginal trauma" and "penetration."

Detective Bissett and Officer Rivera thus provided sufficient facts and circumstances to support a prudent person's belief that C.P.R. had intentionally or knowingly penetrated the sexual organ of L.T., a five-year-old child, with his finger, as alleged by the State. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i), (2)(B) (stating person commits aggravated sexual assault of child if he intentionally or knowingly causes penetration of the sexual organ of child under fourteen years of age by any means); *In re C.M.M.*, 503 S.W.3d at 702 (stating probable cause "requires more than mere suspicion but less evidence than that needed to support a conviction or support a finding by a preponderance of the evidence").

The summary portion of Officer Rodriguez's Predisposition Report, which was admitted into evidence without objection, summarizes the evidence supporting each charge against C.P.R., based in part on the information contained in Detective Bissett's offense reports. The Predisposition Report's summary, which is consistent with Detective Bissett's testimony, also provides sufficient facts and circumstances to support a prudent person's belief that C.P.R. intentionally or knowingly penetrated the sexual organ of L.T., a five-year-old child, with his finger, as alleged by the State. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i), (2)(B); TEX. FAM. CODE § 54.02(e) (allowing juvenile courts to consider written reports from probation officers when determining whether to waive jurisdiction and transfer juvenile's case to criminal court).

### 2. Injury to a Child against S.B

Officer Rivera testified that G.S. told him that L.T. and S.B. had been playing with an older boy with brown hair, who was wearing a black cap, black shirt, and blue jeans and riding a bike and the boy ran towards the community center after the girls yelled at him. Officer Rivera detained C.P.R., who matched the description G.S. had provided, at the community center. When asked if he had been involved in the incident at the park, C.P.R. told Officer Rivera that he had not meant to hurt anyone. A.B., S.B.'s mother, told Detective Bissett that S.B. told her the "same boy" who had touched L.T. had also grabbed S.B.'s left arm and tried to pull her into the

bathroom. According to S.B., her arm hurt when C.P.R. "grabbed her and she tried to get away." Detective Bissett testified that when he looked at S.B.'s arm, he observed "very mild redness there at the time but no—no bruising." According to Detective Bissett, S.B. was 7 or 8 years old when the incident at the park occurred.

Detective Bissett and Officer Rivera thus provided sufficient facts and circumstances to support a prudent person's belief that C.P.R. intentionally or knowingly caused S.B., a seven- or eight-year-old child, physical pain when he grabbed her arm. *See* TEX. PENAL CODE § 22.04(a)(3) (stating person commits injury to child if he intentionally or knowingly by act causes bodily injury to child); *see id.* § 1.07(a)(8) (defining "bodily injury" as "physical pain"); *In re C.M.M.*, 503 S.W.3d at 702 (stating probable cause "requires more than mere suspicion but less evidence than that needed to support a conviction or support a finding by a preponderance of the evidence").

The Predisposition Report's summary, which was admitted into evidence without objection and is consistent with Detective Bissett's and Officer Rodriguez's testimony, also provides sufficient facts and circumstances to support a prudent person's belief that C.P.R. intentionally or knowingly caused S.B., a seven- or eight-year-old child, physical pain when he grabbed her arm. *See* TEX. PENAL CODE §§ 1.07(a)(8), 22.04(a)(3); TEX. FAM. CODE § 54.02(e) (allowing juvenile courts to

23

consider written reports from probation officers when determining whether to waive jurisdiction and transfer juvenile's case to criminal court).

### 3. Indecency with a Child against J.O.

Detective Bissett testified that A.O. told him that his daughter, J.O., told him the boy she had been playing with at the park had "touched her and asked her to take her—her clothes off" and when A.O. showed Detective Bissett a photograph of the boy at the park, Detective Bissett recognized him as C.P.R. Detective Bissett also testified that J.O., who was 8 years old, told the forensic interviewer at the Child Advocacy Center that the boy at the park had laid down on top of her when they were on the top level of the play structure, and he placed his hand inside the front of her underwear. J.O. said she "could feel his fingers moving."

Detective Bissett thus provided sufficient facts and circumstances to support a prudent person's belief that C.P.R. touched the genitals of J.O., an eight-year-old child, with intent to arouse or gratify his sexual desire. *See* TEX. PENAL CODE § 21.11(a)(1) (stating person commits indecency with child by contact if, with child younger than seventeen years of age, he engages in sexual contact with child; *see id.* § 21.01(2) (defining "sexual contact," in part, as "any touching of . . . the genitals of another person with intent to arouse or gratify the sexual desire of any person"); *see also In re C.M.M.*, 503 S.W.3d at 702 (stating probable cause "requires more than

mere suspicion but less evidence than that needed to support a conviction or support a finding by a preponderance of the evidence").

The Predisposition Report's summary, which was admitted into evidence without objection and is consistent with Detective Bissett's testimony, also provides sufficient facts and circumstances to support a prudent person's belief that C.P.R. touched the genitals of J.O., an eight-year-old child, with intent to arouse or gratify his sexual desire. *See* TEX. PENAL CODE §§ 21.01(2), 21.11(a)(1); TEX. FAM. CODE § 54.02(e) (allowing juvenile courts to consider written reports from probation officers when determining whether to waive jurisdiction and transfer juvenile's case to criminal court).

After considering the totality of the circumstances and viewing the evidence in the light most favorable to the juvenile court's findings, we conclude there is more than a scintilla of evidence to support the juvenile court's finding that a prudent person would be justified in believing that C.P.R. committed the alleged offenses of aggravated sexual assault against L.T., indecency with a child against J.O., and injury to a child against S.B. *See In re C.R.*, 571 S.W.3d at 857 (stating evidence is legally sufficient when there is more than scintilla to support determination); *id.* at 858 (stating there is legally sufficient evidence to support probable cause finding under Section 54.029(a)(3) if there are sufficient facts and circumstances to support prudent person's belief accused child committed alleged offense).

25

We overrule C.P.R.'s sole issue.

## Conclusion

We affirm the juvenile court's order.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.