**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00090-CV**
_____

**IN THE MATTER OF T.L.J.**

_____

**On Appeal from the County Court at Law**
**Liberty County, Texas**
**Trial Cause No. 23CC-JUV-00033**

_____

**MEMORANDUM OPINION**

On appeal, Appellant T.L.J., ("Tom") a juvenile, complains the juvenile court erred by waiving jurisdiction and transferring his case to district court arguing the evidence is legally and factually insufficient to support the trial court's transfer to district court.[1] *See* Tex. Fam. Code Ann. §§ 54.02, 56.01(a), (c)(1)(A). For the reasons explained below, we affirm the juvenile court's Order Waiving Jurisdiction and Order of Transfer to District Court.

---

[1]To protect the identity of the child, we use pseudonyms to refer to the child and his parents. *See* Tex. R. App. P. 9.8(b)(2).

*Background*

Tom is charged with murder. The State filed a Petition for Waiver of Jurisdiction and Transfer to District Court, requesting that the juvenile court waive jurisdiction and transfer the case to the appropriate district court under section 54.02 of the Texas Family Code because Tom was sixteen years old at the time of the alleged offense and was sophisticated and mature enough to be treated as an adult. The State alleged that: (1) the prospects of the public's adequate protection and the likelihood of Tom's reasonable rehabilitation by the use of available procedures, services, and facilities in the juvenile court "is in serious doubt" to warrant his treatment as an adult; (2) there was probable cause he committed the offense alleged; and (3) Tom is sophisticated and mature enough to be treated as an adult.

The trial court conducted a hearing on the State's Petition during which it considered witness testimony and the following records in making its decision: Psychological Evaluation conducted by Dr. Kimberly Vandermark Grimsley, a Confidential Social History Report conducted by Juvenile Probation Officer Graciela Trevizo, Confidential Neurocognitive Plan, and Hardin County Incident Reports. Dr. Grimsley's Psychological Evaluation states that Tom understood what he was charged with and the nature of the pending proceedings, and that Tom demonstrates his capacity to assist his counsel. In her report, Dr. Grimsley states the following:

[Tom] was polite and cooperative. He answered all of the psychologist's questions freely, and he showed no signs of difficulty with comprehension or understanding. He was able to state the charges that have been made against him in his own words, as well as to recount the events that took place in his own words. He was able to state how he felt in the moments after the event took place. He expressed that he felt fear and concern, but he never expressed remorse or regret. It is the psychologist's opinion that he is not serious about reforming his behaviors. He is sufficiently aware of his actions, and he is able to be certified as an adult.

Trevizo's Social History Report outlined Tom's family, medical, educational, and substance abuse history and concluded that Tom should be certified as an adult.

[Tom], who was sixteen years of age when the state filed its original petition on July 12th, 2023 was born on October 10th, 2006, and was sixteen when he committed one alleged felony count. No adjudication hearing has been conducted concerning this offense. The sophistication and maturity of the child have been addressed in the diagnostic evaluation by Dr. Kimberly Vandermark Grimsley.

Suppose the court finds probable cause for the first-degree offense of Murder. In that case, it is recommended that [Tom] be transferred to the Liberty County District Court for criminal proceedings.

*Evidence at the Hearing*

**John Christopher Duos**

Detective John Christopher Duos testified that he is employed by the Dayton Police Department. He detailed his educational and professional background and stated that on the night of June 27, 2023, he arrived at a home in Liberty County and observed a victim in the driveway, with a single gunshot wound to the chest, being treated by EMS. Duos interviewed witnesses at the scene but was unable to collect

3

much information that night. The next day, he interviewed the homeowner's granddaughter, who told him that she was with two males the night before, including appellant, and stated the following happened after the granddaughter, her boyfriend Harley Blalock, and Tom, all arrived at her grandmother's home:

> And they said whenever they went up – whenever they showed up, there was – [the victim] was there. Of course, they didn't know his name, but [the victim] and another guy was there and then Blalock and [the victim], for whatever reason, had words and actually ended up getting into a fist fight and then [the granddaughter] was still in the vehicle while the two were fighting and then their buddy, [Tom], exited the back seat with Blalock's handgun and shot at [the victim].

Based on the information received, Tom was arrested. Tom admitted to shooting the victim and told Duos that "Blalock and [the victim] were in a fight, and he was concerned for his friend's well-being, safety, I guess, and out of -- to protect his friend, he shot [the victim]."

**Graciela Trevizo**

Graciela Trevizo testified she works as a probation officer with the Liberty County Juvenile Probation Department. Trevizo testified regarding her educational and professional background and described her job duties as a juvenile probation officer. Trevizo stated that she is familiar with Tom as she had previously been his probation officer in 2020, when Tom was placed on probation for criminal trespass. Tom successfully completed that probation, though she recalled that he missed

4

appointments, had poor communication, and "it didn't really phase him much. He wasn't very concerned about it."

Trevizo prepared Tom's social history report and a copy of her report was admitted at the hearing. In preparation for her report, Trevizo spoke to Tom's parents and visited each parent's respective residence. She testified that his parents were divorced and that each parent had very different parenting styles, describing Tom's father as the disciplinarian, although Mother appeared closer to her children. She stated that Mother's house had several broken windows, holes in the walls and doors ripped off the frames. Mother told Trevizo that the destruction was due to the boys' (including Tom's twin brother and older brother) outbursts in the home. In contrast, Father's home was "well-kept[,]" with Trevizo describing the atmosphere as "more maintained." Tom lived primarily with Mother. She noted that Tom had been diagnosed with ADHD, major depressive disorder, and generalized anxiety disorder, and that Tom had previously taken medication but stopped in 2022. According to Trevizo, Tom had to repeat ninth grade because of truancy but, at the time of the murder, was doing a home-school program with no monitoring or reporting. When Tom attended public school, his grades were a combination of passing and failing. Tom currently resides at the Hardin County Juvenile Detention Center, where he has been written up "numerous" times for rule violations, including profanity, disrespectful behavior, and making a weapon. Trevizo described his current attitude

as "why are you guys doing this to me[,]" and not receptive to help, including therapy. Trevizo explained that, in her opinion Tom should be certified as an adult. Her belief is that Tom could not be rehabilitated if he were placed back on juvenile probation.

**Trey McConnell**

Trey McConnell testified that he is the director of juvenile probation in Liberty County. He described his educational and professional background and stated that his department has worked with Tom in the past. McConnell detailed several incidents that occurred regarding Tom during his supervision. Several of Tom's "detention write-ups" were admitted as evidence. The reports included incidents of profanity directed at officers, disrespectful behavior, assaultive-type conduct, and making a weapon.

**Dr. Kimberly Grimsley**

Dr. Kimberly Grimsley testified that she is the CEO and founder of Exodus Consulting and Psychological Services, she is a clinical psychologist with the State of Texas, and she conducts evaluations. She described her education and professional background and stated that she was there to determine whether Tom should be certified as an adult for trial.

Grimsley testified that she met with Tom and prepared a psychological evaluation. A copy of her psychological evaluation was admitted into evidence. In

her evaluation, Grimsley stated that she spoke with Tom about the alleged incident, conducted an IQ test, and a personality evaluation. She testified that there was nothing remarkable about his appearance, that he was cooperative, pleasant and respectful, and that he told her "that at the time he was having no oppressive thoughts, no suicidal thoughts and that he was not currently experiencing any auditory or visual hallucinations." According to Grimsley, Tom's memory was within normal range, he was able to concentrate and sustain attention, and he had no trouble performing the tests. Tom reported that his father was physically abusive, but he denied any sexual assault. Tom reported that he had a history of drug use and began to smoke marijuana at age 12. Tom also reported that he was diagnosed with bipolar disorder and depression, and he was given medication, but he stopped taking it because "he didn't like the way it made him feel." Tom first told Grimsley that he did not have any auditory or visual abnormalities, and he later reported a "history of seeing black figures in the corner of his room and that he heard voices that told him to kill himself because no one liked him and he wasn't good enough, but he said that had not happened in over two years."

In testifying about Tom's behavior assessment, Grimsley first detailed the testing procedure, objectives and scoring, and testified that Tom has "low average" verbal comprehension skills, perceptual reasoning, and "average" working memory. She stated that Tom's "processing speed is in a borderline range, it just means that

7

he has to process things a little slower, but he is functional." Overall he is in the 14th percentile of the global population, explaining that he would score higher on the assessment than 14 percent of people who took the test. According to Grimsley, Tom does not suffer from an intellectual disability. She also testified per her assessment, that Tom is on par with his education-based grade equivalent in school.

Next, Grimsley administered a personality assessment, explaining that based on the results, Tom showed "no signs of difficulty with his attitude towards school." Tom had "atypical thoughts" noting his previous history of "perceptual abnormality or paranoia and he was endorsing that he does occasionally have unusual thoughts or perceptions[,]" some anxiety, physical ailments such as headaches and sore muscles, but "[n]othing that was a red flag of, you know, extreme danger or anything like that." Grimsley stated that Tom "understood the events for which he's being accused[,] and I think he is competent to understand everything that's going on in this process."

According to Grimsley, Tom did not express "any regret over the alleged situation, but he was concerned about what was going to happen to him." Grimsley testified there was "no barrier" to Tom's being certified as an adult.

**Anna Emmons**

Anna Emmons is a first assistant prosecutor with the Liberty County District Attorney's Office. Emmons stated that she is familiar with juvenile prosecution and

8

the certification process and if the trial court was to waive jurisdiction and transfer the case to criminal court, the Liberty County District Attorney's Office would accept the case for prosecution.

**Mother**

Tom's Mother testified Tom has previously attended Dayton Independent School District but that she "checked him out because he wasn't going to class." Tom primarily lives with her but has visitation with Father. She testified that Tom would fall asleep or skip class, and any medication he was taking for his ADHD and Gilbert Syndrome was discontinued as it made him ill. Tom also attended counseling at school and was prescribed medications including antidepressants which he did not take. She agreed that Tom began to experience behavioral issues starting in sixth grade. She did not believe that Tom is a danger to society, but stated "To himself, yes. And I -- for six years what we've been trying to get him help with." According to Mother, Tom is not the same person as he was before he was arrested and placed into detention, and that his mental acuity "has declined." Mother testified if Tom were to remain in juvenile court and be placed on probation, she would do everything in her power to make sure Tom complies with probation.

At the conclusion of the hearing, the juvenile trial court waived its exclusive jurisdiction and transferred jurisdiction to the appropriate designated district court in Liberty County, Texas for criminal proceedings:

The Court, after considering all of the testimony, the evaluation of the juvenile-respondent under Texas Family Code §51.20, the circumstances of the juvenile-respondent and the circumstances of the alleged offense, does hereby certify and make the following findings:

1. The juvenile-respondent is alleged to have violated a penal law of the grade of first degree felony, to wit: Murder, that on or about the 27th day of June, 2023 in Liberty County and the State of Texas, [Tom], did then and there intentionally or knowingly cause the death of an individual, namely [the victim], by shooting, and the defendant did use or exhibit a deadly weapon, namely a 9mm pistol, during the commission of the offense.

2. The juvenile-respondent was 16 years of age at the time he was alleged to have committed the first degree felony offense of Murder.

3. No adjudication concerning the alleged offense has been made and no adjudication hearing concerning the offense has been conducted.

4. There is probable cause to believe the juvenile-respondent committed the offense alleged.

5. Based on the seriousness of the offense alleged and the background of the juvenile-respondent, the welfare of the community requires criminal proceedings.

6. The alleged offense was against a person.

7. The juvenile-respondent was previously placed on an unrelated, misdemeanor deferred by prosecutor agreement and was deemed to have been unsuccessfully terminated.

8. Liberty County Juvenile Court and Liberty County Juvenile Services do not currently possess adequate resources for the rehabilitation of the child by use of procedures, services, and facilities.

9. The juvenile-respondent is sufficiently sophisticated and mature to be tried as an adult and is sufficiently mature to aid his attorney in his defense.

10. Based on the seriousness of the offense, the public cannot be protected if the juvenile-respondent remains in the juvenile system.

11. Based on the background of the juvenile-respondent, the public cannot be protected if the juvenile-respondent remains in the juvenile system.

12. The likelihood that the juvenile system could rehabilitate the juvenile-respondent is remote.

IT IS THEREFORE ORDERED that this Court waives its exclusive jurisdiction and transfers jurisdiction to the appropriate, designated District Court in Liberty County, Texas for criminal proceedings[.]

Tom timely filed this appeal, asserting the juvenile court erred by waiving jurisdiction and transferring his case to district court when there is no legal or factual evidence to support the transfer. Tex. Fam. Code Ann. §§ 54.02, 56.01(a), (c)(1)(A).

*Analysis*

A juvenile court may waive its jurisdiction and transfer a child to the district court for criminal proceedings if:

(1) the child is alleged to have violated a penal law of the grade of felony;

(2) the child was:

. . .

(B) 15 years of age or older at the time the child is alleged to have committed the offense, if the offense is a felony of the second or third degree or a state jail felony, an no adjudication hearing has been conducted concerning that offense; and

(3) after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court

11

committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

*Id*. § 54.02(a). Among the factors the juvenile court is required to consider are the following:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id*. § 54.02(f). "Any combination of these criteria may suffice to support a waiver of jurisdiction; not every criterion need weigh in favor of transfer." *Matter of C.M.M.*, 503 S.W.3d 692, 701 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citation omitted).

We review a juvenile court's decision to waive its exclusive original jurisdiction and transfer a case to district court using a two-step process. *Bell v. State*, 649 S.W.3d 867, 887 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd); *In re J.J.B.*, No. 09-23-00162-CV, 2024 Tex. App. LEXIS 3583, at *12 (Tex. App.—Beaumont May 23, 2024). First, we review the juvenile court's finding for sufficiency of the evidence. *Bell*, 649 S.W.3d at 887. (citations omitted). "In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the

juvenile court's findings and disregard contrary evidence unless a reasonable factfinder could not reject it." *Id.* (citations omitted); *Matter of C.R.*, 571 S.W.3d 849, 857 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *In re J.J.B.*, 2024 Tex. App. LEXIS 3583, at *12. If there is more than a scintilla of evidence to support the juvenile court's findings, the evidence is legally sufficient. *Bell*, 649 S.W.3d at 887. In reviewing the factual sufficiency of the evidence, we consider all the evidence to determine whether the juvenile court's findings conflict with the great weight and preponderance of the evidence to be clearly wrong or unjust. *Id.*; *Matter of C.R.*, 571 S.W.3d at 857 (citation omitted).

If the juvenile court's findings are supported by legally and factually sufficient proof, we then review the ultimate waiver decision under an abuse-of-discretion standard. *Collins v. State*, 516 S.W.3d 504, 520 (Tex. App.—Beaumont 2017, pet. ref'd) (citations omitted); *see also Matter of A.M.*, 577 S.W.3d 653, 659 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citations omitted). In applying that standard, we conduct our own analysis of the evidence and determine whether the juvenile court acted without reference to guiding rules or principles such that its decision to transfer the case was arbitrary and unreasonable. *See Collins*, 516 S.W.3d at 520 (citation omitted); *see also Bell*, 649 S.W.3d at 887; *In re J.J.B.*, 2024 Tex. App. LEXIS 3583, at *13.

The first statutory factor requires considering whether the alleged offense is one against person or property. Tex. Fam. Code Ann. § 54.02(f)(1). Murder, the offense alleged in this case, is an offense against a person, and the trial court was required to give such an alleged offense "greater weight in favor of transfer[.]" *Id*.

With respect to the second statutory factor, Tom complains that he is not a sophisticated and mature child. *See id*. § 54.02(f)(2). Tom argues that the record demonstrates that he has a low-average or below-average IQ and several disorders, including ADHD, major depressive disorder, anxiety disorder, and schizoaffective disorder, that he processes situations slowly and suffers from intellectual impairment. "In assessing the sophistication and maturity of the child, the juvenile court places emphasis on whether the evidence shows that the child knew right from wrong and could assist his attorney in his defense." *Bell*, 649 S.W.3d at 892. "Evidence that the child understands the seriousness of the charge against him as well as the proceedings support a juvenile court's finding that the child's sophistication and maturity weigh in favor of transfer." *Id*. at 893; *see also In re D.T.*, Nos. 01-24-00568-CV & 01-24-00569-CV, 2025 Tex. App. LEXIS 141, at *23-24 (Tex. App.—Houston [1st Dist.] Jan. 16, 2025, no pet.). Both Grimsley and Trevizo testified that Tom had an understanding of his crime, that he was clear and appropriate in his communications and that he could be certified as an adult. We

14

conclude the evidence is legally and factually sufficient to support a finding the second factor weighed in favor of transfer.

Next, Tom argues the evidence is legally and factually insufficient to "support certification based on Appellant's record and previous history." *See* Tex. Fam. Code Ann. § 54.02(f)(3). The record shows Tom was previously on probation for criminal trespass, and while he completed probation, the record contains evidence he was a less-than-ideal probationer. Trevizo noted that he missed appointments, had poor communication, and exhibited a bad attitude while on probation. Witnesses also testified that Tom displayed no remorse for the shooting. Additionally, there was evidence Tom was skipping classes, smoking marijuana, and instigating fights at school. He continued this behavior while in detention, including profanity directed at officers, disrespectful behavior, assaultive-type conduct, and making a weapon. Trevizo and Grimsley testified that based on Tom's past record and the totality of Tom's actions while in detention, it was in the community's best interest to transfer him to the adult system. We conclude the evidence is legally and factually sufficient to support a finding the third factor weighed in favor of transfer.

Addressing the fourth factor, Tom acknowledges Trevizo, McConnel and Grimsley testified that Tom "was likely to re-offend, not likely to be rehabilitated and that juvenile probation's resources were not likely to assist in rehabilitating [him,]" but he asserts the trial court should have assigned this factor less weight than

the second factor which focuses on the juvenile's sophistication and maturity. However, the trial court found Tom "is sufficiently sophisticated and mature to be tried as an adult and is sufficiently mature to aid his attorney in his defense." Because we have already concluded that finding is supported by sufficient evidence and because it weighs in favor of, rather than against, transfer to the district court, it matters not which factor was assigned more weight by the trial court; they both weigh in favor of the trial court's decision.

After considering the totality of the circumstances and viewing the evidence in the light most favorable to the juvenile court's finding, we conclude there is more than a scintilla of evidence to support the trial court's findings. *See Bell*, 649 S.W.3d at 887; *Matter of C.R.*, 571 S.W.3d at 857. We also conclude the juvenile court's finding does not conflict with the great weight and preponderance of the evidence to be clearly wrong or unjust. *Bell,* 649 S.W.3d at 887.

We next consider whether the trial court abused its discretion when it waived its jurisdiction and transferred Tom's case to district court for criminal proceedings. As detailed above, the evidence shows Tom had a criminal history where he was previously placed on probation, which he completed, but during which he missed appointments and had poor communication and attitude. Testimony also showed Tom continued to have behavioral problems while in detention for this crime, including aggressive threats, profanity, and making a weapon. While the juvenile

16

court heard Tom's mother testify that she would try everything in her power to make sure he complied with probation, the juvenile court could have determined, based on the other witness's testimony, that a mentoring program would not provide the services necessary to sufficiently rehabilitate Tom to offer adequate protection to the public if he were allowed to remain in the juvenile system. *In re J.J.B.*, 2024 Tex. App. LEXIS 3583, at \*20-21. In making its determination, the juvenile court was required to consider the likelihood of the rehabilitation of the child using the procedures, services, and facilities that were currently available to the juvenile court. Tex. Fam. Code Ann. § 54.02(f)(4). The juvenile's age at the time of the transfer "hearing is relevant to the 'likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court'" because the juvenile court's resources are designed to assist and rehabilitate children, not adults. *See Bell*, 649 S.W.3d at 896-97 (citations omitted).

Any combination of the factors listed in 54.02(f) "may suffice to support a waiver of the juvenile court's exclusive original jurisdiction and not every factor need weigh in favor of transfer to the criminal district court." *Id.* at 886. Here, all four factors weigh in favor of waiver and transfer, and all four findings are supported by legally and factually sufficient evidence. We conclude the juvenile court did not abuse its discretion in waiving jurisdiction and transferring Tom's case to district court as its decision was not arbitrary based on the evidence and there is no indication

17

it acted without reference to guiding rules or principles. *See Collins*, 516 S.W.3d at 520; *see also Bell*, 649 S.W.3d at 887; *In re J.J.B.*, 2024 Tex. App. LEXIS 3583, at *22. Accordingly, we overrule Tom's issues on appeal and affirm the juvenile court's Order Waiving Jurisdiction and Order of Transfer to District Court.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on June 26, 2025
Opinion Delivered November 13, 2025

Before Golemon, C.J., Wright and Chambers, JJ.